Susan M. Leming
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
856-854-8900
sleming@brownconnery.com

Noah A. Levine
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8875
noah.levine@wilmerhale.com
(admitted *pro hac vice*)

Samuel J. McHale
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
202-663-6346
sam.mchale@wilmerhale.com
(admitted *pro hac vice*)

*Attorneys for Defendant TD Bank, N.A.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| CATHY LAFURGE and MONICA OROURKE, individually and on behalf of all others similarly situated, | Civil Action No. 1:23-cv-03946-RMB-AMD |
| *Plaintiffs,* | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TD BANK, N.A.'S MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| TD BANK, N.A., | Motion Date: October 16, 2022 |
| *Defendant.* | ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ............................................................................3

    A.    Return Fees ....................................................................3

    B.    The Personal Deposit Account Agreement .........................4

    C.    The CFPB's Policy Change..............................................6

    D.    Cathy LaFurge ...............................................................8

    E.    Monica O'Rourke ...........................................................9

LEGAL STANDARD....................................................................10

ARGUMENT ..............................................................................10

I.    Plaintiffs Fail To State A Claim For Breach Of Contract Or The
Implied Covenant..................................................................10

    A.    Plaintiffs Waived Their Breach Of Contract Claims ..........11

    B.    Plaintiffs' Implied Covenant Claims Should Be Dismissed
Because They Impermissibly Duplicate Their Contract Claims.........13

II.    Plaintiffs Fail To State Viable UDAP Claims...............................15

    A.    The National Bank Act Preempts Plaintiffs' Unfairness Claims........16

    B.    Plaintiffs' Misrepresentation Claims Should Be Dismissed As
Impermissibly Duplicative Of Their Contract Claims.......................20

    C.    New Jersey Choice Of Law Principles Preclude Plaintiffs From
Raising Claims Under The NJ CFA....................................23

    D.    Plaintiffs' UDAP Claims Should Be Dismissed Because They
Fail To Adequately Allege Causation ................................25

CONCLUSION ..........................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*34-06 73, LLC v. Seneca Insurance Co.*,
  39 N.Y.3d 44 (2022) ......................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................10, 13, 26

*Baptista v. JP Morgan Chase Bank N.A.*,
  2010 WL 2342436 (M.D. Fla. June 4, 2010), *aff'd sub nom.*
  *Baptista v. JPMorgan Chase Bank, N.A.*,
  640 F.3d 1194 (11th Cir. 2011) ..................................................................17, 18

*Barnett Bank of Marion County, N.A. v. Nelson*,
  517 U.S. 25 (1996)...........................................................................................16

*Burton v. Teleflex Inc.*,
  707 F.3d 417 (3d Cir. 2013) .............................................................................14

*California Grocers Ass'n v. Bank of America*,
  22 Cal. App. 4th 205 (1994) ..........................................................................3, 6

*Citisteel USA, Inc. v. General Electric Co.*,
  78 F. App'x 832 (3d Cir. 2003) ..........................................................................4

*Coda v. Constellation Energy Power Choice, LLC*,
  409 F. Supp. 3d 296 (D.N.J. 2019).............................................................20, 25

*Cooper v. Samsung Electronics America, Inc.*,
  374 F. App'x 250 (3d Cir. 2010) .......................................................................23

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) .............................................................................13

*Dewey v. Volkswagen AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008)..............................................................25, 27

*Dicicco v. Citizens Financial Group, Inc.*,
  2015 WL 5302767 (E.D. Pa. Sept. 10, 2015)...............................................26, 27

*Dzielak v. Whirlpool Corp.*,
    26 F. Supp. 3d 304 (D.N.J. 2014) ....................................................................23

*Estate of Lagano v. Bergen County Prosecutor's Office*,
    769 F.3d 850 (3d Cir. 2014) ............................................................................28

*Franklin National Bank of Franklin Square v. People*,
    347 U.S. 373 (1954) ..........................................................................................16

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ............................................................................11

*Gregg v. Ameriprise Financial, Inc.*,
    245 A.3d 637 (Pa. 2021) ..................................................................................25

*Gutierrez v. Wells Fargo Bank, NA*,
    704 F.3d 712 (9th Cir. 2012) ...........................................................................18

*Hillsborough Rare Coins, LLC v. ADT LLC*,
    2017 WL 1731695 (D.N.J. May 2, 2017) .......................................................22

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
    37 N.Y. 3d 169 (2021) .....................................................................................25

*Intervet, Inc. v. Mileutis, Ltd.*,
    2016 WL 740267 (D.N.J. Feb. 24, 2016) .......................................................14

*Kurns v. A.W. Chesterton, Inc.*,
    620 F.3d 392 (3d Cir. 2010) ............................................................................16

*Lewis v. Government Employees Insurance Co.*,
    2019 WL 1198910 (D.N.J. Mar. 14, 2019) .....................................................22

*Lin v. Canada Goose US, Inc.*,
    640 F. Supp. 3d 349 (S.D.N.Y. 2022) .......................................................26, 28

*Maniscalco v. Brother International (USA) Corp.*,
    709 F.3d 202 (3d Cir. 2013) ............................................................................25

*Mariscal v. Flagstar Bank, FSB*,
    2021 WL 4260879 (C.D. Cal. Sept. 9, 2021) ..................................................16

*Martinez v. Wells Fargo Home Mortgage, Inc.*,
   598 F.3d 549 (9th Cir. 2010) ........................................................................18, 19

*McMillan v. Nationstar Mortgage Co.*,
   2020 WL 4201605 (E.D. Pa. July 22, 2020) ........................................................19

*Militello v. Allstate Property & Casualty Insurance Co.*,
   2014 WL 2892386 (M.D. Pa. June 26, 2014)........................................................28

*Miller v. Wells Fargo Bank, N.A.*,
   994 F. Supp. 2d 542 (S.D.N.Y. 2014) ..................................................................14

*Mladenov v. Wegmans Food Markets, Inc.*,
   124 F. Supp. 3d 360 (D.N.J. 2015).......................................................................25

*Monroe Retail, Inc. v. RBS Citizens, N.A.*,
   589 F.3d 274 (6th Cir. 2009) ................................................................................19

*Montich v. Miele USA, Inc.*,
   849 F.Supp.2d 439 (D.N.J. 2012)..........................................................................24

*Perks v. TD Bank, N.A.*,
   444 F. Supp. 3d 635 (S.D.N.Y. 2020) ..................................................................20

*Piller v. JPMorgan Chase Bank*,
   2020 WL 8186165 (D.N.J. Oct. 23, 2020) ...........................................................23

*Pramco III, LLC v. Partners & Trust Bank*,
   842 N.Y.S.2d 174 (N.Y. Sup. Ct. 2007).................................................................11

*Price v. Foremost Industries, Inc.*,
   2018 WL 1993378 (E.D. Pa. Apr. 26, 2018)..........................................................20

*Prudential Insurance Co. of America v. Bank of America, N. A.*,
   14 F. Supp. 3d 591 (D.N.J. 2014).........................................................................28

*Quintana v. B. Braun Medical Inc.*,
   2018 WL 3559091 (S.D.N.Y. July 24, 2018)........................................................28

*Red Hawk Fire & Security, LLC v. Siemens Industries Inc.*,
   449 F. Supp. 3d. 449 (D.N.J. 2020)..............................................................11, 14

*Rojas v. Don King Productions, Inc.*,
  2012 WL 760336 (S.D.N.Y. Mar. 6, 2012) ........................................................11

*Sanchez v. Navy Federal Credit Union*,
  Case No. 5:23-cv-00285-JGB-KK (C.D. Cal. Aug. 14, 2023) ...........................21

*Schechter v. Hyundai Motor America*,
  2020 WL 1528038 (D.N.J. Mar. 31, 2020) ........................................................24

*Solo v. Bed Bath & Beyond, Inc.*,
  2007 WL 1237825 (D.N.J. Apr. 26, 2007) .........................................................26

*Stevenson v. Mazda Motor of America, Inc.*,
  2015 WL 3487756 (D.N.J. June 2, 2015) ...........................................................27

*Symquest Group, Inc. v. Canon U.S.A., Inc.*,
  186 F. Supp. 3d 257 (E.D.N.Y. 2016) ................................................................13

*Thabault v. Chait*,
  541 F.3d 512 (3d Cir. 2008) ...............................................................................23

*Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*,
  2021 WL 3668092 (S.D.N.Y. Aug. 17, 2021) ............................................11, 14

*USI Insurance Services LLC v. Miner*,
  801 F. Supp. 2d 175 (S.D.N.Y. 2011) ...............................................................13

*Whittington v. Mobiloil Federal Credit Union*,
  2017 WL 6988193 (E.D. Tex. Sept. 14, 2017) ...................................................18

*Yagudayev v. BMW of North America, LLC*,
  2020 WL 6689799 (D.N.J. Nov. 13, 2020) ........................................................23

## STATUTES, RULES, AND REGULATIONS

12 C.F.R. Pt. 230, App. B ............................................................................................7

12 C.F.R. Pt. 1030, App. B ..........................................................................................7

12 C.F.R. § 7.4002 .....................................................................................................17

57 Fed. Reg. 43337 (Sept. 21, 1992) ..........................................................................7

66 Fed. Reg. 8178 (Jan. 30, 2001) ............................................................................17

12 U.S.C. § 25b ............................................................................................16

12 U.S.C. § 5564 ..........................................................................................19

**OTHER AUTHORITIES**

Greene, *et al.*, U.S. Consumers' Use of Personal Checks:
Evidence from a Diary Survey, Federal Reserve Bank of Atlanta
(Feb. 10, 2020) ..........................................................................................3

Nichols, ABA Statement on CFPB Fee Guidance,
American Bankers' Association (Oct. 26, 2022) ......................................3

CFPB Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment
Practices, 87 Fed. Reg. 66940 (Nov. 7, 2022) ......................................7, 8

TD Bank, Supplement to TD Bank's Personal Deposit Account Agreement
(Sept. 15, 2022) ..........................................................................................8

TD Bank, Personal Fee Schedule ..................................................................8

## PRELIMINARY STATEMENT

In January 2023, Plaintiffs Cathy LaFurge and Monica O'Rourke[1] attempted to deposit checks into their TD Bank, N.A. ("TD") checking accounts.  For reasons they claim not to know, those checks eventually bounced.  When those checks were returned unpaid, TD charged Plaintiffs a fee—as banks have done for decades.  And because Ms. LaFurge spent money from a check that did not clear, she overdrew her account and was charged associated Overdraft Fees in accordance with the operative account agreement.

Drawing heavily on Consumer Financial Protection Bureau ("CFPB") guidance, which the agency has said it will not seek to enforce until November 2023, Plaintiffs argue that TD's practice of charging Return Fees and Overdraft Fees was both categorically unfair and a breach of the operative account agreement.  According to Plaintiffs, the fees are unfair because Plaintiffs could not know their deposited checks would bounce, and the fees breached the parties' contract because TD had not credited their accounts with the amounts they had attempted to deposit in the first place.  Even if these allegations were true, Plaintiffs fail to state a claim.

---

[1] Recognizing that her name is spelled Ms. "ORourke" in the Complaint and case caption, TD refers to her herein as Ms. "O'Rourke" to reflect the spelling of her name as it appears in her signature on her TD account opening documents.

Plaintiffs' breach of contract claim should be dismissed because they have not alleged that they complied with the terms of the operative agreement. Plaintiffs were required to—but did not—provide TD with timely notice and an opportunity to cure the purported problems alleged here. Plaintiffs' breach of the implied covenant claim also fails because it is entirely duplicative of their contract claim.

Plaintiffs' attempt to repackage their contract allegations as claims under three different states' unfair and deceptive practices ("UDAP") statutes also fails. First, the National Bank Act preempts Plaintiffs' unfairness claims. Next, a plaintiff may not assert UDAP claims under the laws of multiple states simultaneously. At minimum, Plaintiffs' claims arising under the laws of New Jersey—a state in which neither Plaintiff has suffered harm or even resides—should be dismissed. Additionally, no matter which state's law applies, Plaintiffs' misrepresentation claims are based on nothing more than their allegations of breach of contractual promises, and should therefore be dismissed. Finally, Plaintiffs' cursory UDAP claims fail because they do not even attempt to plead reliance or causation.

For these reasons, the Complaint should be dismissed with prejudice.

## BACKGROUND

### A.    Return Fees

U.S. banks process tens of billions of checks annually.[2]  Processing this enormous volume of checks inevitably entails identifying and returning bounced checks.  This process is administratively burdensome to banks, and it is also risky, as banks often make funds from checks provisionally available to customers before the bank can know whether a check will be returned unpaid.  If a customer spends the provisionally credited funds and the check is subsequently returned unpaid, the bank may face difficulties recouping those funds.[3]  To mitigate these risks, banks have long imposed fees both on the writers of checks for which there are insufficient funds, as well as on those who attempt to deposit checks for which there are insufficient funds.  *See Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 209 (1994).  This case concerns the latter fee, which TD refers to as the Cashed or Deposited Item Returned Fee ("Return Fee").

---

[2] *See* Claire Greene, *et al.*, U.S. Consumers' Use of Personal Checks: Evidence from a Diary Survey, Federal Reserve Bank of Atlanta (Feb. 10, 2020), https://www.atlantafed.org/-/media/documents/banking/consumer-payments/research-data-reports/2020/02/13/us-consumers-use-of-personal-checks-evidence-from-a-diary-survey/rdr2001.pdf.
[3] *See* Rob Nichols, ABA Statement on CFPB Fee Guidance, American Bankers' Association (Oct. 26, 2022), https://www.aba.com/about-us/press-room/press-releases/statement-on-cfpb-fee-guidance.

Plaintiffs allege, on behalf of themselves and others in this putative class action, that TD charged them Return Fees after checks they deposited into their respective checking accounts were returned, even though TD purportedly had not made deposited funds available to them.  Compl. ¶¶ 40-43, 46-48.  Additionally, though the Complaint is not clear, Ms. LaFurge appears to allege she was improperly assessed at least one related Overdraft Fee.  *Id.* ¶¶ 42, 44.  Plaintiffs argue that TD breached the operative account agreement and violated the New Jersey Consumer Fraud Act ("NJ CFA"), the New York General Business Law § 349 ("NY GBL"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PA UTPCPL") (collectively, the "UDAP Laws" or the "UDAP Claims").

## B.   The Personal Deposit Account Agreement

TD's Personal Deposit Account Agreement ("PDAA") "governs the terms and conditions of" Plaintiffs' checking accounts.[4]  Ex. A at 1; *see also* Compl. ¶ 67.

_____

[4] TD has attached as Exhibit A the operative PDAA, effective November 15, 2022, and accompanying addenda; and as Exhibit B the operative Fee Schedule, effective November 15, 2022.  The Complaint quotes from, incorporates by reference, and is based on each of these documents.  *See*, *e.g.*, Compl. ¶¶ 17, 28, 32, 34, 36.  The Court may therefore consider these documents in deciding this motion.  *See Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 835 (3d Cir. 2003) ("In ruling on a motion to dismiss, a trial court 'may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (citation omitted)).

Under the PDAA, TD is authorized to "refuse to accept an item for deposit or to return all or a part of it" to the customer.  Ex. A at 5.  When TD accepts an item for deposit, its "general policy" is to make funds available for use within one business day of the deposit.  *Id.* at 43; *see also id.* at 5 (TD will "usually" provide provisional credit for items deposited by a customer).  However, in some circumstances, such as when TD believes a check or "item will not be paid," it "may delay" providing provisional credit or "refuse" to provide provisional credit altogether.  *Id.* at 5; *see also id.* at 45 (listing circumstances under which TD may delay providing funds).

The PDAA in effect when Plaintiffs deposited their checks also authorized TD to charge the fees detailed in the Account Agreement and the Fee Schedule, including both Return Fees and Overdraft Fees.  *See* Ex. A at 33 (customers "agree to pay all fees applicable to the Account, including those detailed in the Personal Fee Schedule."); *see also id.* at 4 ("This Agreement includes your promise to pay the charges listed on the Personal Fee Schedule[.]").

The PDAA provides that when a check or item is returned unpaid "for any reason," TD will deduct the "amount of the dishonored check or item" from the customer's account.  Ex. A at 6.  For "any such check or item that is dishonored," customers "agree to pay the Bank a fee[.]"  *Id.* at 6; *see also* Ex. B, Fee Schedule at 1 (listing a Return Fee of $15.00).

The PDAA also authorizes TD to charge an Overdraft Fee, which "occurs when your Available account balance is not sufficient to cover a transaction, but [TD] pays it anyway." Ex. A at 10. The PDAA describes several circumstances where TD may charge an Overdraft Fee, including when there are insufficient funds to cover the deduction of the amount of a returned check, *id.* at 46, and when the customer withdraws deposited funds "before they become available." *Id.* at 12.

Except as otherwise provided for in the PDAA, TD provides customers with monthly account statements. Ex. A at 15. Customers "must review" their monthly account statements and notify TD within 30 days after the statement was mailed if the customer believes "there is an error, forgery or other problem with the information shown on [the] Account statement." *Id.* at 16. If a customer does not do so, he or she "agree[s] not to assert a claim against [TD] concerning any error, forgery or other problem relating to a matter shown on an Account statement[.]" *Id.* at 16-17.

### C.    <u>The CFPB's Policy Change</u>

Return Fees have been standard for decades. *See, e.g., Cal. Grocers Ass'n*, 22 Cal. App. 4th at 209 (concluding, in litigation dating to 1977, that Return Fees are not unconscionable). Indeed, the CFPB even promulgated a sample form for disclosing such fees, which was adopted from a version originally promulgated by the Federal Reserve Board in 1992. *See* 12 C.F.R. Pt. 1030, App. B, Form B-10

(CFPB version); 12 C.F.R. Pt. 230, App. B, Form B-10 (FRB version); *see also* 57 Fed. Reg. 43337, 43385 (Sept. 21, 1992) (final FRB rule adopting sample form). Plaintiffs' Complaint ignores this settled practice, focusing myopically on a recent CFPB Bulletin ("CFPB Bulletin" or "the Bulletin"), which Plaintiffs characterize as announcing that TD's policies are and always have been "unfair."  Compl. ¶¶ 17-18; *see also* Response to TD's Pre-Motion Letter, Dkt. 8 at 1.

The CFPB Bulletin does no such thing.  The Bulletin notifies financial institutions that the CFPB may consider Return Fees unfair if institutions employ "blanket policies" of charging fees "irrespective of the circumstances of the particular transaction or patterns of behavior on the account."  CFPB Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment Practices, 87 Fed. Reg. 66940, 66940 (Nov. 7, 2022).  The CFPB states that such blanket policies would "likely"—not necessarily—be unfair when the consumer "would not be able to reasonably avoid" a fee because "the check depositor has no control over whether, and likely no reason to anticipate that, the deposited check would be returned."  *Id.* At the same time, the CFPB was clear that it would not be unfair to charge Return Fees when a consumer could avoid them, such as when a consumer "repeatedly deposit[s] bad checks from the same originator[.]"  *Id.* at 66941.  Therefore, the CFPB explained, in potential future enforcement actions, the agency would evaluate fees in light of the "particular facts and circumstances."  *Id.*

In recognition of the fact that its Bulletin represents a policy change, the CFPB was unequivocal that it "does not intend to seek monetary relief for potential unfair practices regarding [Return Fees] assessed prior to November 1, 2023." *Id.* at 66940 n.1. Thus, not only did the CFPB say it would not seek monetary relief related to Return Fees assessed before the announcement of the CFPB's change in policy (i.e., the Bulletin's effective date of November 7, 2022), but it also said it would not seek relief related to any Return Fees assessed in the *entire first year following its publication*—meaning institutions can modify or end such fees before that date. *See id.* Indeed, the current versions of TD's PDAA and Fee Schedule no longer reference such fees. *See* Supplement to TD Bank's Personal Deposit Account Agreement (Sept. 15, 2023)[5]; Personal Fee Schedule.[6]

### D.   Cathy LaFurge

Ms. LaFurge is a resident and citizen of Pennsylvania. Compl. ¶ 9. She alleges that she either attempted to or did deposit a check into her TD checking account in January 2023, but that the check deposit eventually failed. *Compare id.* ¶ 40 ("made a deposit") *with id.* ¶¶ 42, 43 ("attempted deposit"). After her deposit

---

[5] The Supplement is available online at
https://www.feeds.td.com/en/document/oao/pdf/PersonalAcctAgree.pdf (last accessed Sept. 22, 2023).
[6] The Fee Schedule is available online at
https://www.feeds.td.com/en/document/oao/pdf/1_fees.pdf (last accessed Sept. 22, 2023).

failed, Ms. LaFurge alleges she was charged a $15.00 Return Fee on January 12, 2023.  *Id.* ¶ 43.  According to Ms. LaFurge, "she was not provided provisional credit for that deposit" and "was not allowed to use any portion of that deposit." *Id.* ¶ 41.  Ms. LaFurge asserts that it was a violation of the PDAA and misleading for TD to charge her a Return Fee—and that it was unfair because consumers like her have no way of knowing whether a check originator lacks sufficient funds.  *See id.* ¶ 43; *see also id.* ¶¶ 17-19.[7]

Ms. LaFurge references Overdraft Fees she was charged around the time her check was returned unpaid, and appears to challenge the one that TD charged when TD removed "the funds it had deposited into her account."  *Id.* ¶ 44.  She also alleges that TD breached the PDAA by charging her this Overdraft Fee.  *Id.* ¶¶ 37-38.

Ms. LaFurge does not allege that she notified TD of these purportedly "improper" Return Fees or Overdraft Fees, or of TD's alleged failure to make funds available to her.  *See generally id.* ¶¶ 39-44.

### E.   Monica O'Rourke

Ms. O'Rourke is a resident and citizen of New York.  Compl. ¶ 10.  Ms. O'Rourke states that in January 2023 she attempted to deposit into her TD

---

[7] Although not relevant to the grounds of this motion, it bears noting that Ms. LaFurge would have been able to know whether the check she deposited would clear because she wrote that check against her own account at another bank.

checking account a check which eventually failed to clear.  *Id.* ¶ 46.  Like Ms.

LaFurge, Ms. O'Rourke contends TD did not provide her provisional credit or

otherwise allow her to use or withdraw these funds.  *Id.* ¶ 47.  On January 17,

2023, after the deposit failed, Ms. O'Rourke alleges she was charged a $15.00

Return Fee.  *Id.* ¶ 48.  She does not allege that she notified TD that it failed to

make funds available to her, nor does she allege that she notified TD of her

purportedly "improper" Return Fee.  *See generally id.* ¶¶ 45-48.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the Complaint must

contain sufficient factual matter to state a claim that is plausible on its face.  *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  *Id*.

## ARGUMENT

## I.    Plaintiffs Fail To State A Claim For Breach Of Contract Or The Implied Covenant

Plaintiffs' contract claims should be dismissed because they fail to allege

they complied with the contractual mechanism to remedy the problems alleged in

10

the Complaint.  Plaintiffs' implied covenant claims also fail because they are entirely duplicative of their contract claims.

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) the plaintiff performed in accordance with the contract; (3) the defendant breached its contractual obligations; and (4) the defendant's breach resulted in damages.  *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022).  And a claim for breach of the implied covenant "must be dismissed as duplicative when a breach of contract claim is pled on the same facts, or when the conduct at issue 'is also the predicate for breach of the underlying contract.'" *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2021 WL 3668092, at *4 (S.D.N.Y. Aug. 17, 2021) (internal citations omitted); *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) ("The plaintiff cannot maintain a breach of the implied covenant of good faith and fair dealing claim that is duplicative of its breach of contract claim.").

## A.   Plaintiffs Waived Their Breach Of Contract Claims

A breach of contract claim will not lie where the plaintiff fails to allege compliance with the contract, especially if she does not do so "in even general terms[.]"[8] *Rojas v. Don King Prods., Inc.*, 2012 WL 760336, at *3 (S.D.N.Y. Mar.

---

[8] The same result obtains under New Jersey law, which also requires a plaintiff to plead compliance with the contract.  *See Frederico v. Home Depot*, 507 F.3d 188,

6, 2012) (applying New York law).  Indeed, courts routinely enforce contractual

provisions requiring notice as a condition precedent to bringing a claim.  *See*

*Rojas,* 2012 WL 760336, at \*2 (collecting cases); *see also Pramco III, LLC v.*

*Partners & Trust Bank*, 842 N.Y.S.2d 174, 181 (N.Y. Sup. Ct. 2007) ("[W]here the

language of the contract makes it unmistakably clear that a condition precedent

was intended, literal observance is required." (internal punctuation omitted)).

The PDAA here contains a notice-and-cure provision, which required

Plaintiffs to review their account statements and notify TD of any "error" or "other

problem" within thirty days of the date the statement was mailed.  Ex. A at 16.  If

Plaintiffs fail to do so, the PDAA states that they may not assert a claim against TD

concerning any problem "relating to a matter shown on [the] Account statement."

*Id.* at 17.  Some courts have excused a plaintiff's failure to comply with more

limited notice-and-cure provisions relating only to "errors" when the defendant

argued that the purported errors were not, in fact, errors, but rather were standard

policy.  *See* Response to TD's Pre-Motion Letter, Dkt. 8 at 2 (citing cases).  Yet

TD's provision is more robust than those in the cases cited by Plaintiffs, and

requires notice not just of purported errors, but also of "other problems" reflected

on the monthly account statements.  Ex. A at 16.

---

203 (3d Cir. 2007) (concluding that under New Jersey law a party bringing claim
for breach of contract must allege it "performed its own contractual obligations").

Plaintiffs do not plead that they ever notified TD of any errors or problems related to the disputed Return or Overdraft Fees—let alone that they did so within thirty days from when their January account statements were mailed.  For example, Plaintiffs do not allege they told TD that the disputed Return Fees had been improperly charged because, in their view, they had not received provisional credit.  Nor does Ms. LaFurge allege that she notified TD that her disputed Overdraft Fees were improper because she had sufficient funds in her account to cover the transactions which caused the overdraft.  TD therefore had no opportunity to resolve the problems Plaintiffs allege in their Complaint.  Instead, Plaintiffs' only reference to performance is a conclusory, boilerplate allegation that they performed "substantially all" of the contract's requirements.  *See* Compl. ¶ 71. This "[t]hreadbare recital of [an] element[] of a cause of action, supported by mere conclusory statements, do[es] not suffice."  *Iqbal*, 556 U.S. at 678.

Plaintiffs' failure to comply with the PDAA (let alone to adequately allege compliance) warrants dismissal of their contract claims.  *See USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 181 (S.D.N.Y. 2011) (no breach of contract where plaintiff fails to comply with contractual notice and cure provision).

### B.    Plaintiffs' Implied Covenant Claims Should Be Dismissed Because They Impermissibly Duplicate Their Contract Claims

In addition, no matter the merits of their contract claims, Plaintiffs' implied covenant claims should be dismissed because they are impermissibly duplicative of

13

their contract allegations.  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.")  (alterations incorporated) (citation omitted); *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 266 (E.D.N.Y. 2016) (implied covenant claim "can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim." (citation omitted)).[9]

Plaintiffs' implied covenant claims simply recite boilerplate language about good faith being an element of every contract, and then state that "TD has breached the covenant of good faith and fair dealing in the Account Agreement through its policies and practices as alleged herein."  Compl. ¶ 71.  Because Plaintiffs allege

---

[9] The same is true under New Jersey law.  *See Red Hawk Fire & Sec., LLC*, 449 F. Supp. 3d at 463 (under New Jersey law, "[t]he plaintiff cannot maintain a breach of the implied covenant . . . claim that is duplicative of its breach of contract claim"); *Intervet, Inc. v. Mileutis, Ltd.*, 2016 WL 740267, at *5 (D.N.J. Feb. 24, 2016) (dismissing implied covenant claim as duplicative because it will not suffice to "merely recite the same conduct" as alleged for a "breach of contract and transform such conduct into a breach of the implied duty of good faith and fair dealing by appending a conclusory label that those actions breaching the contract were also done in bad faith").  And Pennsylvania courts do not recognize the implied covenant as an independent cause of action.  *See Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (affirming grant of summary judgment on implied covenant claim because "under Pennsylvania law, the implied covenant of good faith does not allow for a cause of action separate and distinct from a breach of contract claim.").

no separate conduct supporting any implied covenant claim beyond TD's alleged breach of the contractual terms, the implied covenant claims "must be dismissed." *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 555 (S.D.N.Y. 2014) (dismissing implied covenant claim based on the same alleged facts as contract claim); *see also Trireme Energy Holdings, Inc.*, 2021 WL 3668092, at *4 (same).

## II.     Plaintiffs Fail To State Viable UDAP Claims

Although, at bottom, Plaintiffs' allegations all revolve around representations made in the PDAA, and thus breach of the PDAA, they also bring claims under three separate State UDAP Laws based on two theories: (1) unfairness and (2) misrepresentation. As a threshold matter, Plaintiffs' unfairness claims are preempted by the National Bank Act and its implementing regulations, which expressly authorize national banks to set and charge fees in connection with deposit accounts, while Plaintiffs' misrepresentation claims fail because they allege nothing more than a breach of contract. Moreover, regardless of whether Plaintiffs rely on a theory of unfairness or misrepresentation, their UDAP Claims fail for two additional reasons: *first*, because New Jersey choice-of-law principles preclude these non-resident Plaintiffs from raising claims under New Jersey law; and *second*, because Plaintiffs fail to plead causation.

A.     __The National Bank Act Preempts Plaintiffs' Unfairness Claims__

To the extent Plaintiffs seek to raise UDAP Claims based on a theory that

charging Return Fees is inherently unfair as a *state* law matter (i.e., under state

UDAP Laws), the National Bank Act ("NBA") and its implementing regulations

preempt those Claims.[10]  *See* Compl. ¶¶ 19, 24.

The NBA preempts a state statute or its application if it "prevents or

significantly interferes with the exercise by the national bank of its powers" under

the legal standard for preemption articulated in *Barnett Bank of Marion County,*

*N.A. v. Nelson*, 517 U.S. 25 (1996).  12 U.S.C. § 25b(b)(1)(B).  *Barnett Bank* and

the precedent it incorporates make clear that courts should presume that state law

may not impose conditions on the exercise of a national bank's power where

Congress (1) "explicitly grants" a power to a national bank and (2) provides "no

'indication' that [it] intended to subject that power to local restriction."  517 U.S. at

33-35 (citing *Franklin Nat'l Bank of Franklin Square v. People*, 347 U.S. 373,

375-379 (1954)).  In *Franklin National Bank*, for example, the Supreme Court held

that a New York law prohibiting national banks from using the word "savings" in

their advertising was preempted because the NBA authorized national banks to

receive deposits "without qualification or limitation."  347 U.S. at 374, 376.  Thus,

---

[10] For clarity, TD does not contend that the NBA preempts Plaintiffs' contract
claims or their misrepresentation claims.

under *Barnett Bank*, any state statute obstructing outright or imposing conditions on a national bank's exercise of its expressly authorized national banking powers is preempted by and "must yield" to federal law. *Kurns v. A.W. Chesterton, Inc.*, 620 F.3d 392, 395 (3d Cir. 2010).

National banks have "wide latitude to charge fees." *Mariscal v. Flagstar Bank, FSB*, 2021 WL 4260879, at *5 (C.D. Cal. Sept. 9, 2021). This is because the NBA and its implementing regulations expressly authorize a national bank—like TD—to set and charge customers "non-interest charges and fees" related to "the banking services it provides." *Baptista v. JP Morgan Chase Bank N.A.*, 2010 WL 2342436, at *5 (M.D. Fla. June 4, 2010), *aff'd sub nom. Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011). This federally authorized banking power is set forth explicitly in 12 C.F.R. § 7.4002(a): "A national bank may charge its customers non-interest charges and fees, including deposit account services charges." That same regulation provides a series of factors that banks may consider in calculating non-interest charges and fees, but states that, ultimately, "[t]he establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank." 12 C.F.R. § 7.4002(b). The Office of the Comptroller of the Currency ("OCC") did not enumerate specific fees in § 7.4002, lest in doing so courts might erroneously conclude that the OCC's failure to enumerate a fee meant that such a

fee was not authorized. *See* 66 Fed. Reg. 8178-02 (Jan. 30, 2001) (noting the explicit reference in a previous version to two fees "could be misinterpreted as a limitation on a national bank's ability to charge other types of fees"). Nevertheless, the OCC has made clear that "returned check charges" constitute non-interest charges and fees under § 7.4002(b).  66 Fed. Reg. 8178, 8180 (Jan. 30, 2001).  In short, the NBA and its implementing regulations authorize national banks to set and charge Return Fees, as a matter of their own business decisions, with no indication that Congress intended for this authority to be conditioned on any state or local restrictions.

For these reasons, courts have held that the NBA preempts state law claims which attack the fairness of a wide range of banking fees. *See, e.g., Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 718 (9th Cir. 2012) (claims challenging overdraft fee practices under California law preempted by OCC regulation); *Martinez v. Wells Fargo Home Mortg., Inc*., 598 F.3d 549, 556 (9th Cir. 2010) (claims that mortgage underwriting fees were "too high" preempted because OCC determined that fee determinations are "business decisions to be made by each bank."); *Baptista*, 640 F.3d at 1197-98 (state statute which disallowed banks from charging non-customers for cashing checks preempted because it significantly reduced the bank's discretion in deciding how to charge fees); *cf. Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, at *9 (E.D. Tex. Sept. 14, 2017)

(plaintiff's use of state consumer protection law to dictate to a federal credit union what fees it may charge and how it may charge them preempted by Federal Credit Union Act). For example, in *Martinez*, plaintiffs argued that mortgage underwriting fees were "too high" and "ask[ed] the court to decide how much an appropriate fee would be." 598 F.3d at 556. But because "the OCC has clearly provided how the fees are to be determined"—that is, as "business decisions to be made by each bank"—the plaintiffs' claims of unfairness under California law were "preempted." *Id.*

Here, as in *Martinez*, Plaintiffs' claim that charging Return Fees is inherently "unfair" or "unconscionable" under the state UDAP Laws pled in the Complaint, *see* ¶¶ 78-79, 97, is tantamount to a request that this court decide that a fee authorized by the NBA and its implementing regulations is unfair under state law. The precedent is clear: state law may not be wielded to "significantly interfere" with—indeed, to outright obstruct—"fundamental national bank function[s]." *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 283 (6th Cir. 2009). Therefore, Plaintiffs' UDAP Claims premised on a theory of "unfairness" should be dismissed.

Nothing about the CFPB Bulletin changes this calculus. As a threshold matter, Plaintiffs have not (and could not) plead a violation of *federal* consumer protection law. *See* 12 U.S.C. § 5564; *McMillan v. Nationstar Mortg. Co.*, 2020

19

WL 4201605, at *3 (E.D. Pa. July 22, 2020) ("[T]here is no private cause of action under the CFPA," which "is enforceable only by the Bureau").  But more to the point, the NBA—not the Consumer Financial Protection Act—is the preempting statute here, and Plaintiffs may not circumvent the NBA's preemptive authority by arguing that, in a separate statute, Congress delegated general authority to a federal agency to declare various consumer financial practices unfair.  Moreover, in the very Bulletin on which Plaintiffs rely, the CFPB made clear that, in terms of liability, its view is a change with only prospective impact—indeed only prospective impact starting more than a year after the Bulletin's publication.  Thus, the CFPB explains in the Bulletin that it does not intend to seek monetary penalties related to Return Fees charged before November 2023.  Plaintiffs may not leverage state law to do what the federal government itself will not even do: seek relief related to the pre-November 2023 Return Fees at issue in this litigation.

## B.   <u>Plaintiffs' Misrepresentation Claims Should Be Dismissed As Impermissibly Duplicative Of Their Contract Claims</u>

To the extent Plaintiffs raise UDAP Claims based on purported misrepresentations, those claims should be dismissed because they allege only that TD breached the PDAA.  Plaintiffs' UDAP Claims cannot rest on a mere breach of contract, and should be dismissed in the absence of allegations concerning acts or practices that are "misleading in a material respect separate and apart from" allegations that a defendant breached a contract.  *Perks v. TD Bank, N.A.*, 444 F.

Supp. 3d 635, 642 (S.D.N.Y. 2020) (dismissing NY GBL claim for this reason);

*see also Price v. Foremost Indus., Inc.*, 2018 WL 1993378, at *5 (E.D. Pa. Apr. 26,

2018) (dismissing PA UTPCPL claim because alleged misrepresentations "have to

do solely with [defendant's] contractual obligations"); *Coda v. Constellation*

*Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 302 (D.N.J. 2019) (dismissing

NJ CFA claim for failure to plead "substantial aggravating circumstances," which

is required to "proceed on a contract-based claim under the CFA").  Plaintiffs fail

to do this.

Here, Plaintiffs' UDAP Claims simply restate their contract claims.  With

respect to their contract claims, they argue that "TD Bank is <u>only</u> authorized by

contract to charge [Return Fees] and/or Overdraft Fees on returned deposits when

it has actually provided cash . . . or 'provisional credit' for immediate use and then

must 'reverse' such credit . . . ."  Compl. ¶ 28 (emphasis in original).  Plaintiffs

then argue that the same conduct is misleading under State UDAP Laws, stating it

is a "misleading practice" to charge Return Fees "even where *no actual deposit or*

*check cashing took place*."  *Id.* ¶ 79 (emphasis in original).  But Plaintiffs do not

allege that TD made any misrepresentations other than the promises purportedly

made in the PDAA itself.  Plaintiffs make no allegations whatsoever as to any

extracontractual statements or advertisements made by TD with respect to the

charging of Return Fees.  Their failure to base their UDAP Claims on anything

21

other than a mere breach means that Plaintiffs either are correct about the meaning of the contract and have a contract claim, or they are incorrect about the meaning of the contract and have neither contract nor UDAP Claims.

*Sanchez v. Navy Federal Credit Union* illustrates this point. In that case, plaintiff "conflate[d] her claims that sound in contract and those that arise under California's consumer protection statutes" by pointing exclusively to statements "contained in the contracts themselves" as misleading. Order at 13, Dkt. 33, Case No. 5:23-cv-00285-JGB-KK (C.D. Cal. Aug. 14, 2023). Noting it was not aware of any authority supporting the proposition that "a statement contained inside a contract is actionable under the [False Advertising Law] or [Unfair Competition Law]," the court held that even if the plaintiff's interpretation of the contract was correct, the "Plaintiff would state a claim for *breach of contract*, not for *false advertising*." *Id.* at 14 (emphasis in original).

Here, as in *Sanchez*, the only alleged misrepresentations identified by Plaintiffs make clear they have conflated their breach of contract and UDAP Claims. If Plaintiffs suffered any actionable loss (and TD maintains they did not), it was—under Plaintiffs' own reasoning—because TD assertedly breached the contract, not because TD committed fraud or misrepresented anything. Plaintiffs' misrepresentation claims should therefore be dismissed. *See Lewis v. Gov't Emps. Ins. Co.*, 2019 WL 1198910, at *5 (D.N.J. Mar. 14, 2019) (dismissing NJ CFA

claim where allegations "ha[d] no connection to any unlawful conduct referenced" in the complaint and "[i]nstead . . . [wa]s tied directly to the alleged breach of contract."); *Hillsborough Rare Coins, LLC v. ADT LLC*, 2017 WL 1731695, at *11 (D.N.J. May 2, 2017) (dismissing NJ CFA claim with "no allegations . . . regarding an ascertainable loss steaming [sic] from the alleged unconscionable practices beyond that resulting from a breach of contract.").

### C.   New Jersey Choice Of Law Principles Preclude Plaintiffs From Raising Claims Under The NJ CFA

Each Plaintiff purports to simultaneously raise claims under two consumer fraud acts—first, under those of their home states (New York for Ms. O'Rourke and Pennsylvania for Ms. LaFurge); and second, under the NJ CFA, ostensibly based on the fact that TD is headquartered in New Jersey.  However, New Jersey choice of law principles preclude such an approach and preclude Plaintiffs from raising claims under New Jersey law.[11]  Courts in this circuit have spoken clearly: "[a] Plaintiff may bring state law claims only under the law of the state where he or she lived and the alleged injury occurred."  *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014)  As a result, "NJCFA claims arising out of a nonresident's out-of-state transaction warrant dismissal even where the defendant

---

[11] "It is well established that in a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern each of the issues of a case." *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008).

is headquartered or maintains offices in New Jersey." *Piller v. JPMorgan Chase Bank*, 2020 WL 8186165, at *2 (D.N.J. Oct. 23, 2020); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (plaintiff "who purchased the television in his home state of Arizona, is not entitled to sue under the New Jersey consumer fraud statute"); *Yagudayev v. BMW of N. Am., LLC*, 2020 WL 6689799, at *7 (D.N.J. Nov. 13, 2020) (dismissing NJ CFA claims where "the only allegation connecting Plaintiff's Arizona transaction to New Jersey is the location of Defendant's headquarters"); *Schechter v. Hyundai Motor Am.*, 2020 WL 1528038, at *20 (D.N.J. Mar. 31, 2020) (holding "that Plaintiff cannot assert consumer protection claims under the laws of states in which he does not reside").[12]

Here, the only nexus with New Jersey asserted in the Complaint is that TD is headquartered in Cherry Hill, New Jersey and that TD makes "corporate decisions" about how to assess fees in New Jersey. *See* Compl. ¶¶ 74-75. Plaintiffs do not allege that they viewed, relied upon, or acted upon any purported

---

[12] TD also reserves the right to argue that New Jersey law does not apply to Plaintiffs' claims for another reason: the choice of law provision in the operative agreements provides that "any claim . . . arising under or related to this Agreement" will be governed by the law of the state where the store in which a customer opened his or her account in person is located. Ex. A at 31. Evidence will show that both Plaintiffs opened their TD accounts in person in New York—a point TD made in its pre-motion letter which Plaintiffs did not contest. *See* Dkt. 7 at 2-3; Dkt. 8 at 1-3.

misrepresentations in New Jersey. Thus, as "[a] majority of the courts in this District have held," the "mere fact that a company is headquartered in New Jersey or that 'unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state" for choice of law purposes. *Montich v. Miele USA, Inc.*, 849 F.Supp.2d 439, 449 (D.N.J. 2012) (citation omitted); *see also Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013) (collecting cases). For these reasons, Plaintiffs' NJ CFA claims should be dismissed.

D.   **Plaintiffs' UDAP Claims Should Be Dismissed Because They Fail To Adequately Allege Causation**

Plaintiffs' UDAP Claims should also be dismissed because they fail to plead that any purported misrepresentations made by TD caused their alleged injuries—an essential element of a UDAP claim under New Jersey, New York, and Pennsylvania law.[13] *See Coda*, 409 F. Supp. 3d at 301 (NJ CFA); *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y. 3d 169, 176 (2021) (NY GBL); *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (PA UTPCPL's private right of action provision "creates a

---

[13] New Jersey courts also require that NJ CFA claims be pled with particularity under Rule 9(b). *See, e.g., Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 376-378 (D.N.J. 2015) (collecting cases applying Rule 9(b) to causation element and concluding plaintiff failed to allege causation element of NJ CFA claim with particularity).

causation element, which requires a private plaintiff to demonstrate justifiable reliance").

To plead causation, a plaintiff may not rely on general and conclusory allegations. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526–27 (D.N.J. 2008) (dismissing NJ CFA claim where plaintiffs "do not allege when the [purportedly misleading statements] were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements."); *see also Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *4 (D.N.J. Apr. 26, 2007) (insufficient to allege generally that plaintiff suffered an ascertainable loss "as a result of Defendant's misleading statements and intentional omissions"). A more robust explanation is required to state a NJ CFA claim, like a plaintiff purchased a product or service because of a specific representation or that a plaintiff would not have purchased a service had it been accurately represented. *See Solo*, 2007 WL 1237825, at *4. And even for the NY GBL and PA UTPCPL claims, a plaintiff must establish a plausible causal nexus without merely stating legal conclusions. *Iqbal*, 556 U.S. at 678; *see also Dicicco v. Citizens Fin. Grp., Inc.*, 2015 WL 5302767, at *16 (E.D. Pa. Sept. 10, 2015) (PA UTPCPL claim requires plausibly establishing justifiable reliance); *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 360 (S.D.N.Y. 2022) (NY GBL claim may not rest on legal conclusions).

Here, Plaintiffs do not explain how any alleged losses are actually attributable to any purported TD misrepresentation.  They simply allege in conclusory fashion that they "were injured and suffered ascertainable loss . . . as a proximate result of TD Bank's conduct in that Plaintiffs and the other Class members should not have been charged Cashed or Deposited Item Return Fees on bounced checks."  Compl. ¶ 84; *see also id.* ¶ 85 ("These injuries are the direct and natural consequence of TD Bank's misrepresentations and omissions.").  This does nothing to connect any purported misrepresentations to Plaintiffs' alleged losses: they do not, for example, state that Plaintiffs opened their TD accounts, used TD's checking services, or deposited the checks in question *because of* any representation made about Return Fees, nor do they allege they would not have opened their checking accounts, used TD's checking services, or deposited the checks in question had they known that TD would charge Return Fees or Overdraft Fees in the manner alleged.  Indeed, Plaintiffs never even plead that they viewed the purported misrepresentations in the PDAA.

It is not enough to merely identify purported misrepresentations and state legal conclusions.  In the absence of any allegations plausibly connecting the misrepresentations to the alleged injuries, Plaintiffs' UDAP Claims should be dismissed.  *See Dewey*, 558 F. Supp. 2d at 526–27 (dismissing NJ CFA claim because causation element insufficiently pled); *Stevenson v. Mazda Motor of Am.,*

27

*Inc.*, 2015 WL 3487756, at *8 (D.N.J. June 2, 2015) (allegations that automobile's warranty book contained misrepresentations in absence of allegations that plaintiff viewed warranty book before purchasing automobile were insufficient to satisfy causation element of NJ CFA); *Dicicco*, 2015 WL 5302767, at *15-16 (justifiable reliance element of PA UTPCPL claim not sufficiently pled in absence of allegations that "had they known of defendant's deception, they would have altered their own conduct"); *Militello v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 2892386, at *4 (M.D. Pa. June 26, 2014) (justifiable reliance element of PA UTPCPL claim not pled despite allegation that defendant intentionally misled plaintiff because plaintiff did not allege taking "any action pursuant to that conduct to his detriment"); *Lin*, 640 F. Supp. 3d at 360 (causation element of NY GBL not sufficiently pled where plaintiff did not allege he "saw misrepresentations prior to his purchase"); *Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (causation element of NY GBL claim not sufficiently pled where plaintiff did not allege he "ever saw these statements and under what circumstances").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014) (leave to amend not required if it would be "inequitable or

futile"); *Prudential Ins. Co. of Am. v. Bank of Am., N. A.*, 14 F. Supp. 3d 591, 596

(D.N.J. 2014) (dismissal "with prejudice is appropriate if amendment would be

inequitable or futile.").

Dated: September 22, 2023                    Respectfully submitted,


                                             <u>s/ Susan M. Leming</u>
                                             Susan M. Leming
                                             BROWN & CONNERY, LLP
                                             360 Haddon Avenue
                                             Westmont, NJ 08108
                                             sleming@brownconnery.com
                                             856-854-8900

                                             Noah A. Levine
                                             WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                             7 World Trade Center
                                             250 Greenwich Street
                                             New York, NY 10007
                                             noah.levine@wilmerhale.com
                                             212-230-8875
                                             212-295-6311
                                             (admitted *pro hac vice*)

                                             Samuel J. McHale
                                             WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                             2100 Pennsylvania Avenue, N.W.
                                             Washington, DC 20037
                                             202-663-6346
                                             sam.mchale@wilmerhale.com
                                             (admitted *pro hac vice*)

                                             *Attorneys for Defendant TD Bank,
                                             N.A.*