

New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

## For Use by Clerk's Office Only

| Payment type ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |
|---|---|---|---|---|

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Renner K. Walker | (646) 362-3075  ext. | Camden |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| Hausfeld LLP | |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 33 Whitehall St., 14th Floor | New York | NY | 10004 |

| Document Type | Jury Demand |
|---|---|
| Original Complaint | ■ Yes    ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption  CATHY LAFURGE and MONICA OROURKE v. TD BANK, N.A. |
|---|---|
| CATHY LAFURGE, et al., Plaintiffs | |

Case Type Number (See page 3 for listing)  __508__

| | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ■ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ■ No |
| Is this a professional malpractice case? | ☐ Yes | ■ No |

If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit.

| Related Cases Pending? | ☐ Yes | ■ No |
|---|---|---|
| If "Yes," list docket numbers | | |

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ■ No |
|---|---|---|

| Name of defendant's primary insurance company (if known) | ☐ None | ■ Unknown |
|---|---|---|

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?   ■ Yes   ☐ No

If "Yes," is that relationship:

☐ Employer/Employee   ☐ Friend/Neighbor   ☐ Familial   ■ Business

☐ Other (explain) Bank customers _____

Does the statute governing this case provide for payment of fees   ■ Yes   ☐ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

Do you or your client need any disability accommodations?   ☐ Yes   ■ No

If yes, please identify the requested accommodation:

Will an interpreter be needed?   ☐ Yes   ■ No

If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: _Renner Walker_____

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 | Accutane/Isotretinoin |
| 281 | Bristol-Myers Squibb Environmental |
| 282 | Fosamax |
| 285 | Stryker Trident Hip Implants |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 299 | Olmesartan Medoxomil Medications/Benicar |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 625 | Firefighter Hearing Loss Litigation |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 632 | HealthPlus Surgery Center |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☑ **Putative Class Action**          ☐ **Title 59**          ■ **Consumer Fraud**

**HAUSFELD LLP**
33 Whitehall St., 14th Fl.
New York, NY 10004
By: Renner K. Walker
Atty. ID: 264302018
Ph.: (646) 357-1100
Rwalker@hausfeld.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| CATHY LAFURGE and MONICA OROURKE, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      vs.<br><br>TD BANK, N.A.,<br><br>      Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – CAMDEN COUNTY<br><br>   DOCKET NO.: _____<br><br><br>Civil Action<br><br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Cathy LaFurge and Monica ORourke ("Plaintiffs"), on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## <u>INTRODUCTION</u>

1.     Plaintiffs bring this action on behalf of themselves and classes of all similarly situated consumers against Defendant TD Bank, N.A. ("TD Bank"). In violation of state consumer protection law, TD Bank unfairly, deceptively, and unlawfully charges accountholders so-called "cashed or deposited item returned" fees ("Cashed or Deposited Item Returned Fees") on deposits that accountholders attempt to make into their TD Bank accounts, but which fail because they could not be processed against the originator's account. In doing so, TD Bank violates its adhesion

1

contracts with accountholders when it charges Cashed or Deposited Item Returned Fees even where no funds were made available on an account. Worse, in some circumstances, TD Bank charges *both* Cashed or Deposited Item Returned Fees *and* Overdraft Fees where no funds were made available, and a check was returned through no fault of the accountholder.

2.    Plaintiffs and similarly situated accountholders are shocked when they are assessed hefty Cashed or Deposited Item Returned Fees (and, in some cases, Cashed or Deposited Item Returned Fees *and* Overdraft Fees) after attempting, but failing to make a deposit into their accounts or attempting, but failing to cash checks.

3.    TD Bank's practice is unlawful, unfair, deceptive and in violation of state consumer protection laws because Plaintiffs and the putative class members have no control over whether the item attempted for deposit would be returned. Nor can the attempted depositor verify with the check originator's depository institution prior to depositing an item whether there are sufficient funds in the issuer's account for it to clear. Moreover, consumers like Plaintiffs reasonably understand they will only be assessed "Cashed or Deposited Item Returned Fees" when they are actually provided and use the funds attempted for deposit and those actually deposited and used funds are later reversed—not when attempted deposits are never made available or used by accountholders in the first place.

4.    TD Bank's fee assessment practice is also in breach of TD Bank's own adhesion contract because that contract only authorizes TD Bank to assess Cashed or Deposited Item Returned Fees (and in some cases, Overdraft Fees) where it has actually cashed or deposited funds into an account, where accountholders have actually used such funds, and where TD Bank must then attempt to recoup already-used funds. However, TD Bank routinely charges such fees even where it has not made deposited funds available to accountholders and such funds have not been

used by accountholders for any purpose. In such cases, the supposed "return" of a deposit or reversal of funds deposited into an account is purely fictional since the funds were never actually deposited and there was no harm to TD Bank.

5.      In sum, and as explained in detail below, TD Bank never represented to its accountholders that it would charge Cashed or Deposited Item Returned Fees (and in some cases, Overdraft Fees) whenever they *attempted* to make a deposit that failed, but instead promised that such fees would be assessed *only* when an item attempted for deposit actually was cashed successfully or funds were deposited, used by the accountholder, and then later needed to be recouped by the Bank. Indeed, TD Bank calls the fee at issue a Cashed or Deposited Item Returned Fee, not a "Cashing *Attempt* or Deposit *Attempt* Fee."

6.      Plaintiffs, on behalf of themselves and the Classes (defined below), seek to end TD Bank's deceptive practices and force it to refund improper Cashed or Deposited Item Returned Fees and Overdraft Fees. Plaintiffs seek damages, restitution, and injunctive relief, as set forth more fully below.

## JURISDICTION AND VENUE

7.      This Court may exercise general personal jurisdiction over Defendant TD Bank because, as set forth below, TD Bank is a citizen of the State of New Jersey. Furthermore, this Court may exercise specific personal jurisdiction over TD Bank because Plaintiffs' and the putative Class's claims arise from and relate to TD Bank's acts and omissions in New Jersey.

8.      Venue is proper pursuant to N.J. Court Rule 4:3-2(a) because TD Bank resides in Camden County, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Camden County.

## PARTIES

9.      Plaintiff LaFurge is a resident and citizen of Pennsylvania. On January 12, 2022, Plaintiff LaFurge was charged $15 for a Cashed or Deposited Item Returned Fee when there was an insufficient amount to cover the deposit.

10.      Plaintiff ORourke is a resident and citizen of New York. On January 17, 2023, Plaintiff ORourke was charged $15 for a Cashed or Deposited Item Returned Fee when there was an insufficient amount to cover the deposit.

11.      Defendant TD Bank is a national bank with its main office and principal place of business in Cherry Hill, New Jersey. Accordingly, pursuant to 28 U.S.C. § 1348, TD Bank is a citizen of New Jersey.

12.      Among other things, TD Bank is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative Classes.

### FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.      TD Bank Unfairly, Unlawfully and Deceptively Charges "Junk Fees" in the Form of Cashed or Deposited Item Returned Fees**

13.      TD Bank's accountholders are routinely charged Cashed or Deposited Item Returned Fees on attempted deposits into their checking account that are returned unpaid because the deposit could not be processed against the originator's account. This occurs even when an attempted deposit never results in the accountholder accessing or having access to the amount of the attempted deposit—in other words, where no "deposit" actually occurs.

14.      There are many reasons items attempted for deposit or cashing can be returned unprocessed. For example, an originator may not have sufficient funds available in their account to pay the amount stated on the check; an originator may have directed the issuing depository institution to stop payment; the account referenced on the check may be closed or located in a

foreign country; or there may be questionable, erroneous, or missing information on the check, including with respect to the signature, date, account number, or payee name.

15.     Importantly, consumers like Plaintiffs who attempt deposits or check cashing have no control over whether, and no reason to anticipate that, the attempted deposit or cashing would be returned. Nor can the depositor verify with the originator's depository institution prior to depositing an item whether there are sufficient funds in the issuer's account for the item to clear.

16.     In other words, accountholders have absolutely no control over whether the deposits or check cashing they attempt will be returned unpaid—and no control over whether they will be assessed Cashed or Deposited Item Returned Fees by TD Bank.

17.     In its October 2022 Bulletin, The Consumer Financial Protection Bureau called this type of blanket policy used by TD Bank here "unfair":

> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair. Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. ***Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers***. In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. ***An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it***. Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But ***a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account***. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

**Ex. C**, pp. 3-4 (emphasis added).[1]

18.     Indeed, the Consumer Financial Protection Bureau (CFPB) explicitly stated it would be considered "unfair" under the Consumer Financial Protection Act for financial institutions like TD Bank to charge "Returned Deposited Item Fees to consumer for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account[.]" *See* Ex. B. And yet, TD Bank does exactly that.

19.     For the same reasons the CFPB has deemed the charging of Returned Deposited Item fees to be "unfair" under the Consumer Financial Protection Act, the same is true under state consumer protection laws, which similarly ban unfair business practices.

20.     Even worse, TD Bank has a blanket policy of charging $15 Cashed or Deposited Item Returned Fees on *attempted* deposits or *attempted* check cashing, even where *no actual deposit or check cashing took place*.

21.     This, too, is misleading. Indeed, TD Bank itself named the relevant fee a ***Cashed*** or Deposited Item Returned Fee, which reasonably indicates that such a fee will only be assessed by the Bank where an item is *successfully* "cashed" so funds can be used by an accountholder. Instead, the fee is charged to accountholders even when TD Bank incurs no loss from the returned transaction and indeed does not even make the funds available to accountholders at all, meaning TD Bank has no need to try to recoup such amounts.

22.     "Cashed or Deposited" as those terms appear in TD Bank's Fee Schedule reasonably refer to the circumstances in which a deposit is successfully performed, such that an

---

[1] *Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment Practices*, Bureau of Consumer Financial Protection Bulletin, applicable as of November 7, 2022, available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed March 21, 2023).

accountholder is provided the funds deposited for use. In financial industry terms, and according to the Farlex Financial Dictionary, "cashed" means "to deposit a check at a bank or other institution and to receive cash in exchange."  "Deposited" analogously means to deposit an item and to receive use of the funds deposited in exchange. But TD Bank as a matter of policy assesses Cashed or Deposited Item Returned Fees even where no cash has been received by an accountholder and even where no funds have been provided for use by the accountholder.

23.    In short, "Cashed" or "Deposited" as used in the TD Bank Fee Schedule does not and cannot reasonably mean that TD Bank may assess a fee when it merely accepts and tries to effectuate a deposit at a later time, nor can it reasonably mean a mere notation in a system or on a bank statement that TD Bank is considering whether to not make funds available at some future time.

24.    It is unfair and deceptive to charge mis-named Cashed or Deposited Item Returned Fees even where no "cashing" or "deposit" has occurred.  The fee is not, after all, called an *Attempted* Cashed or *Attempted* Deposited Item Returned Fee.

**B.     TD Bank Breaches Its Adhesion Contract When It Assesses Cashed or Deposited Item Returned Fees on Deposits That Never Occurred**

25.    When a deposit is attempted by an accountholder, funds may be provided by the Bank immediately in the form of cash or immediately in the form of electronic access to the deposited amount, both subject to later verification of the validity of the deposit. On the other hand, in other cases and at the discretion of the Bank, no cash will be provided for the attempted deposit and no funds will be made available immediately in the form of electronic access to the deposited amount, while the Bank attempts to verify the validity of the attempted deposit. These provide two very different paths when a determination is made by the Bank that an attempted deposit must be returned.

7

26.     In the former path (when cash or electronic access is provided immediately), the return of a deposit causes real risk for the Bank. Having already provided cash or allowed the accountholder to use funds deposited, the Bank must attempt to recoup those funds and must debit funds from the account to ensure they can no longer be spent. Debiting those funds may cause an overdraft on the account.

27.     In the latter path (where no cash was provided for use by the accountholder), it is far different. Having never provided cash or provided an increase in funds that an accountholder can use, the Bank need not attempt to recoup any funds and need not attempt to debit funds from an account to ensure they can no longer be spent. It need only make a bookkeeping notation in its records that funds will not be provided for use in the future as a result of the attempted deposit.

28.     According to the TD Bank Deposit Agreement, **Ex. A** and TD Bank Fee Schedule, **Ex. B**, TD Bank is <u>only</u> authorized by contract to charge Cashed or Deposited Item Returned Fees and/or Overdraft Fees on returned deposits when it has actually provided cash to an accountholder or provided "provisional credit" for immediate use and then must "reverse" such credit:

> **Deposit Policy**
> We may refuse to accept an item for deposit or to return all or a part of it to you. Any item that we accept for deposit is subject to later verification. We will usually give you provisional credit for items deposited into your Account. However, we may delay or refuse to give you provisional credit if we believe in our discretion that your item will not be paid. <u>We will reverse any provisional credit we have given for an item deposited into your Account if we do not receive final credit for that item, and charge you a fee (see Personal Fee Schedule). If the reversal of a provisional credit creates an overdraft in your Account, you will owe us the amount of the overdraft, plus any overdraft fees when applicable (see Personal Fee Schedule)</u>. We will determine when final credit is received for any item. Please read the Funds Availability Policy for a detailed discussion of how and when we make funds available to you.

Ex. A, at 5 (emphasis added).

29.     However, TD Bank routinely charges Cashed or Deposited Item Return Fees and Overdraft Fees even where it provided no immediate provisional credit and therefore made no reversal or debit of funds when the attempted deposit failed.

30.     Worse, TD Bank's monthly statements and online banking interfaces are incorrect and misleadingly show attempted deposits being credited for immediate use to accounts, when that is not true and no new funds have been made available.

31.     Where there is no cash provided and no provisional credit made available—in other words, where only an *attempted* deposit occurs—TD Bank is not authorized by its own adhesion contract to assess a Cashed or Deposited Item Returned Fee.

32.     TD Bank's Deposit Agreement reaffirms this principle in another provision:

**Returned Checks/Waiver of Rights**
If you deposit a check or item in your Account that the drawee bank returns unpaid for any reason (called "dishonor"), the amount of the dishonored check or item will be deducted from your Account…You agree to pay the Bank a fee for any such check or item that is dishonored (see Personal Fee Schedule). The Bank may also collect any amounts due to the Bank because of returned checks, through the right of set-off, from any other of your Accounts at the Bank, or collect the funds directly from you.

Deposit Agreement, 6.

33.     The above provision reiterates this fundamental premise—there will be no Cashed or Deposited Item Returned Fee assessed where the funds were not actually made available to the accountholder.  An amount can only be "deducted" from an account where it has been previously provided. Nor is there any need to "collect amounts due" where no amounts were made available in the first place.

34.     Yet a third Deposit Agreement provision makes these same promises again— where funds from an attempted deposit are made available and then it is later determined that the deposit was not valid, it is <u>only</u> in that circumstance that an Overdraft Fee may be assessed:

9

**Returned Items Subsequent to Availability of Funds**
If a check or other item you deposited to your Account is returned to us unpaid after the funds have been made available to you, the amount of the check or other item will be deducted from your Account. If there are insufficient funds in your Account, we reserve the right to demand payment directly from you and to charge you for the overdraft, if applicable, as posted in our most recent Personal Fee Schedule.

Deposit Agreement, 46.

35.    In other words, there is no Overdraft Fee assessed where the funds were not actually made available to the accountholder and then subsequently deducted from the account. This makes sense—where TD Bank makes funds available immediately and then must later deduct those funds from an account, it is assuming risk and providing a service, so an Overdraft Fee is (arguably) justified.

36.    Indeed, the Deposit Agreement makes clear the Bank may provide cash to a person depositing a check drawn on another bank—that, in other words, TD Bank may "cash" such a check and will retain certain protections when it does so:

**Cashing of Checks**
Typically, the Bank will cash checks drawn on other banks for its Customers who have adequate available funds in their Account(s). If any such check should be returned by the paying bank for any reason, the Bank will charge you a fee (see Personal Fee Schedule). In addition, the Bank will debit the amount of the returned check from your Account(s). If the debit creates an overdraft in your Account, you will owe us the amount of the overdraft plus any overdraft fees when applicable (see Personal Fee Schedule).

Deposit Agreement, 6.

37.    The above provision does not apply and does not provide the Bank the ability to "debit the amount of the returned check" or assess overdraft fees when no cash was ever provided and no deposit was made in the first place.

38.    Lastly, and as described in more detail above, the Fee Schedule, Ex. B, makes the same promise that a Cashed or Deposited Item Returned Fee will only be assessed where cash or immediate availability was provided to an accountholder:

Cashed or deposited item returned (per item) $15.00

**C.** **Plaintiff LaFurge's Experience**

39.     Plaintiff LaFurge maintains a personal checking account with TD Bank.

40.     In January 2023, Plaintiff LaFurge made a deposit into her TD Bank account using TD Bank's mobile application.

41.     Plaintiff LaFurge was not provided provisional credit for that deposit, was not allowed to use any portion of that deposit and did not in fact use any portion of that deposit. The deposit was never made available to her for any purpose.  Plaintiff LaFurge was not allowed to withdraw funds against her attempted deposit.

42.     Indeed, because Plaintiff LaFurge was not allowed to access any portion of that attempted deposit, she was assessed an Overdraft Fee on a debit she later made from her account that was deemed to be an overdraft *only because* the attempted deposit had never actually been made to her account. Had the funds been made available to her, she never would have been assessed an Overdraft Fee on the subsequent debit.

43.     To Plaintiff LaFurge's surprise, and through no fault of her own, Plaintiff LaFurge's attempted deposit failed, and Plaintiff LaFurge was charged a $15.00 Cashed or Deposited Item Returned Fee on January 12, 2023. This fee was unfair, misleading, and unauthorized by the contract.

44.     Plaintiff LaFurge was *also* assessed an Overdraft Fee on the next day, January 13, 2023, purportedly for TD Bank removing the funds it had deposited into her account. But as described above, TD Bank had never actually credited the funds to Plaintiff LaFurge's account, and it could not therefore have removed the funds from Plaintiff LaFurge's account—much less charged an overdraft fee for doing so. This fee was improper and not authorized by the contract.

11

### D.        **Plaintiff ORourke's Experience**

45.     Plaintiff ORourke maintains a personal checking account with TD Bank.

46.     In January of 2023, Plaintiff ORourke attempted to deposit a check into her TD Bank Account using TD Bank's mobile application.

47.     Plaintiff ORourke was not provided provisional credit for that deposit, was not allowed use any portion of that attempted deposit, and did not in fact use any portion of that attempted deposit.

48.     To Plaintiff ORourke's surprise, and through no fault of her own, that attempted deposit failed, and Plaintiff ORourke was charged a $15.00 Cashed or Deposited Item Returned Fee on January 17, 2023. This fee was improper and not authorized by the contract.

## CLASS ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

50.     The proposed "Cashed or Deposited Item Returned Fee Nationwide Class" is defined as:

> All TD Bank accountholders who, during the applicable statute of limitations through the date of class certification, were charged Cashed or Deposited Item Returned Fees on attempted deposits that were returned.

51.     The proposed "Overdraft Fee Nationwide Class" is defined as:

> All TD Bank accountholders who, during the applicable statute of limitations through the date of class certification, were charged Overdraft Fees when an attempted deposit was returned.

52.     Plaintiffs also bring alternative state subclasses on behalf of New York and Pennsylvania residents.

53.     The Nationwide Classes and alternative state subclasses defined above are

collectively referred to herein as the "Classes." Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

54.    Excluded from the Classes are TD Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which TD Bank has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55.    The members of the Classes are so numerous that joinder is impractical.  The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, TD Bank's records.

56.    The claims of the representative Plaintiffs are typical of the claims of the Classes they seek to represent in that the representative Plaintiffs, like all members of the Classes, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all members of the Classes, were damaged by TD Bank's misconduct in that they were assessed deceptive Cashed or Deposited Item Returned Fees. Furthermore, the factual basis of TD Bank's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And TD Bank has no unique defenses that would apply to Plaintiffs and not the Classes.

57.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

58.    The questions of law and fact common to the Classes include, but are not limited to, the following:

a.      Whether TD Bank's assessment of Cashed or Deposited Item Returned Fees was unfair, deceptive, or misleading;

b.      Whether TD Bank's assessment of Cashed or Deposited Item Returned Fees was in breach of its contract;

c.      The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

d.      Whether Plaintiffs and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

59.     Plaintiffs' claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful TD Bank Cashed or Deposited Item Returned Fee policies and practices. Plaintiffs have suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

60.     Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of TD Bank, no member of the Classes could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the members of the Classes will continue to suffer losses and TD Bank's misconduct will proceed without remedy.

62.     Even if members of the Classes themselves could afford such individual litigation,

the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

63.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

64.     TD Bank has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Classes as a whole.

65.     All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract, Including Breach of the Implied Covenant**
**(On Behalf of Plaintiffs and the Nationwide Class)**

66.     Plaintiffs incorporate by reference each of the factual allegations set forth above in paragraphs 1-65.

67.     Plaintiffs and TD Bank have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in TD Bank's Account Agreement and related documentation.

68.     No contract provision authorizes TD Bank to charge Cashed or Deposited Item Returned Fees even on *attempted* deposits even when *no actual deposit took place* and no funds were made available to accountholders. Further, no contract provision authorizes TD Bank to charge overdraft fees in this circumstance, either.

69.     Therefore, TD Bank breached the terms of its Account Agreement by charging these fees.

70.     Additionally, good faith is an element of every contract pertaining to the assessment of fees. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

71.     TD Bank has breached the covenant of good faith and fair dealing in the Account Agreement through its policies and practices as alleged herein. Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

72.     Plaintiffs and members of the Classes have sustained damages as a result of TD Bank's breaches of the account contract.

**SECOND CLAIM FOR RELIEF**
**Violation of New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, et seq.**
**(On Behalf of Plaintiffs and the Nationwide Class)**

73.     Plaintiffs incorporate by reference each of the factual allegations set forth above in paragraphs 1-65.

74.     The State of New Jersey has a significant interest in regulating the conduct of businesses operating within its borders. New Jersey, which seeks to protect the rights and interests of New Jersey and all residents and citizens of the United States against a company headquartered and doing business in New Jersey, has an interest in the Plaintiffs' claims.

16

75.     The main office, or principal place of business, of TD Bank in Cherry Hill, New Jersey, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to Cashed or Deposited Item Returned Fees on bounced checks. TD Bank's corporate decisions regarding how to misrepresent and assess Cashed or Deposited Item Returned Fees on bounced checks were made from and in New Jersey.

76.     Under choice of law principles, the law of New Jersey applies to the nationwide common law claims of all Nationwide Class members. Additionally, given New Jersey's significant interest in regulating the conduct of businesses operating within its borders, New Jersey's consumer protection statutes may be applied to non-resident consumer plaintiffs.

77.     The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, et seq. ("NJ CFA" or "act"), prohibits unconscionable commercial practices, false promises, misrepresentations, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise.

78.     In the course of TD Bank's business, TD Bank violated the act by engaging in the unfair and unconscionable practice of charging Cashed or Deposited Item Returned Fees on bounced checks, without any fault or control on the part of the consumer, and further by charging overdraft fees as a result of the same.

79.     Moreover, TD Bank violated the act by engaging in the unfair, unconscionable, and misleading practice of charging Cashed or Deposited Item Returned Fees even on *attempted* deposits or *attempted* check cashing, even where *no actual deposit or check cashing took place*.

80.     Further, TD Bank's acts and practices described herein offend established public

policy because the harm they cause to consumers outweighs any benefit associated with such practices.

81.     TD Bank's actions as set forth above occurred in the conduct of trade or commerce. TD Bank's unconscionable, unfair, fraudulent, and/or deceptive acts or practices were likely to and did in fact deceive reasonable consumers. No reasonable consumer would expect to be charged a Cashed or Deposited Item Returned Fee when a check bounces through no fault of their own, with no means of preventing the check from bouncing, and especially not when no deposit was made and no funds were made available.

82.     TD Bank intentionally and knowingly misrepresented and/or intentionally and knowingly omitted material facts regarding its accounts and its overdraft practices with an intent to mislead Plaintiffs and the Classes.

83.     TD Bank knew or should have known that its conduct violated the New Jersey CFA.

84.     TD Bank's conduct proximately caused injuries to Plaintiffs and the other members of the Class. Plaintiffs and the other members of the Classes were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of TD Bank's conduct in that Plaintiffs and the other Class members should not have been charged Cashed or Deposited Item Returned Fees on bounced checks.

85.     These injuries are the direct and natural consequence of TD Bank's misrepresentations and omissions.

86.     TD Bank's violations present a continuing risk to Plaintiffs as well as to the general public. TD Bank's unlawful acts and practices complained of herein affect the public interest.

87.     Pursuant to N.J.S.A. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

18

**THIRD CLAIM FOR RELIEF**
**Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiff ORourke and the Alternative New York Subclass)**

88.　　Plaintiffs incorporate by reference each of the factual allegations set forth above in paragraphs 1-65.

89.　　N.Y. Gen. Bus. Law § 349(a) provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

90.　　TD Bank's actions regarding Cashed or Deposited Item Returned Fees, as described herein, are deceptive acts or practices in the conduct of the business trade or commerce of retail banking

91.　　The deceptive acts or practices in the furnishing of retail banking services took place in this state.

92.　　N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

93.　　Plaintiff ORourke and the classes have been injured by TD Bank's violations of N.Y. Gen. Bus. Law § 349.

94.　　TD Bank's misleading and deceptive conduct occurred, and continues to occur, in the course of TD Bank's business.

95.　　As an actual and proximate result of TD Bank's misconduct, Plaintiff ORourke and the Class were injured and suffered damages. TD Bank is liable to Plaintiff ORourke and the Class for damages in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Deceptive Acts or Practices – Pennsylvania Unfair Trade Practices**
**and Consumer Protection Law 73 P.S. § 201-1 et seq.**
**(On Behalf of Plaintiff LaFurge and the Pennsylvania Subclass)**

96.     Plaintiffs incorporate by reference each of the factual allegations set forth above in paragraphs 1-65.

97.     TD Bank engages in unfair business practices relating to the imposition of Cashed or Deposited Item Returned Fees, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. In particular, the wrongful conduct described herein violated 73 P.S. § 201-2(4)(v) (representing that goods or services have characteristics, uses, or benefits that they do not have), § 201-2(4)(xiv) (failing to comply with the terms of any written guarantee or warranty given to a buyer), and § 201-2(4)(xxi) (engaging in any other deceptive conduct which creates a likelihood of confusion or misunderstanding).

98.     As an actual and proximate result of TD Bank's misconduct, Plaintiff LaFurge and the Class were injured and suffered damages. TD Bank is liable to Plaintiff LaFurge and the Class for damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring TD Bank's Cashed or Deposited Item Returned Fees policies and practices to be wrongful, unfair, and unconscionable;

2.     Restitution of all Cashed or Deposited Item Returned Fees paid to TD Bank by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.       Disgorgement of the ill-gotten gains derived by TD Bank from its misconduct;

4.       Actual damages in an amount according to proof;

5.       Treble damages pursuant to applicable law and in an amount according to proof;

6.       Punitive and exemplary damages;

7.       Pre-judgment interest at the maximum rate permitted by applicable law;

8.       Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.       Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: June 20, 2023                 Respectfully submitted,

*Renner Walker*

Renner K. Walker (NJ Bar No. 264302018)
Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004
Tel: (646) 357-1100
*rwalker@hausfeld.com*
*snathan@hausfeld.com*

James J. Pizzirusso*
Ian J. Engdahl*
**HAUSFELD LLP**
888 16th Street N.W.
Suite 300
Washington, D.C. 20006
Tel: (202) 540-7200
*iengdahl@hausfeld.com*
*jpizzirusso@hausfeld.com*

**KALIELGOLD PLLC**
Sophia Goren Gold*
950 Gilman Street, Ste 200
Berkeley, CA 94710
Tel: (202) 350-4783
*sgold@kalielgold.com*

**KALIELGOLD PLLC**
Jeffrey D. Kaliel*
1100 15th Street NW 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*

*\*pro hac vice* to be filed

*Attorneys for Plaintiffs and the Putative Classes*

22