Renner K. Walker
Steven M. Nathan (admitted pro hac vice)
HAUSFELD LLP
33 Whitehall St., 14th Fl.
New York, NY 10004
(646) 357-1100
rwalker@hausfeld.com
snathan@hausfeld.com

Sophia Goren Gold
KalielGold PLLC
950 Gilman Street, Ste 200
Berkeley, CA 94710
(202) 350-4783
sgold@kalielgold.com

James J. Pizzirusso (admitted pro hac vice)
HAUSFELD LLP
888 16th St. N.W., Suite 300
Washington, D.C. 20006
(202) 540-7200
jpizzirusso@hausfeld.com

Jeffrey D. Kaliel
KalielGold PLLC
1100 15th Street NW 4th Floor
Washington, D.C. 20005
(202) 350-4783
jkaliel@kalielpllc.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHY LAFURGE and MONICA OROURKE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TD BANK, N.A.,<br><br>Defendant. | CASE NO. 1:23-cv-03946-RMB-AMD<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TD BANK, N.A.'S MOTION TO DISMISS THE COMPLAINT**<br><br>Motion Date: November 20, 2023<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I.   INTRODUCTION ..........................................................................................1

II.  LEGAL STANDARD ....................................................................................3

III. FACTUAL BACKGROUND ..........................................................................4

IV. ARGUMENT ................................................................................................5

   A.  Plaintiffs State Claims Under State Consumer Protection Acts......................5

     1.  The New Jersey Consumer Fraud Act ...................................................9

     2.  New York's General Business Law § 349 .................................................11

     3.  Pennsylvania's UTPCPL ........................................................................13

     4.  Plaintiffs Consumer Protection Claims Are Not Duplicative of their Breach of Contract Claims ................................................................................15

     5.  Plaintiffs Allege Causation......................................................................18

     6.  Plaintiffs' Claims Are Not Preempted .....................................................19

     7.  Plaintiffs' NJCFA Claim Should Not be Dismissed Based on a Premature Choice of Law Analysis ........................................................................28

   B.  Plaintiffs State a Claim for Breach of Contract ............................................30

   C.  Plaintiffs State a Claim for Breach of the Implied Covenant ........................36

V.  CONCLUSION ............................................................................................39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abramson v. Affinity Federal Credit Union*,
  No. CV2013104MASDEA, 2021 WL 3885325 (D.N.J. Aug. 31,
  2021) ........................................................................................................18

*Alexander v. Anthony Int'l, L.P.*,
  341 F.3d 256 (3d Cir. 2003) ...............................................................36

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) ...............................................10, 11

*Baldanzi v. WFC Holdings Corp.*,
  No. 07-CV-9551, 2008 WL 4924987 (S.D.N.Y. Nov. 14, 2008) ......................21

*Bang v. BMW of N. Am., LLC*,
  No. 15-CV-6945, 2016 WL 7042071 (D.N.J. Dec. 1, 2016) .............................29

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
  517 U.S. 25 (1996).........................................................................22, 26

*Benex LC v. First Data Merch. Servs. Corp.*,
  14-CV-6393, 2016 WL 1069657 (E.D.N.Y. Mar. 16, 2016) ......................31, 37

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*,
  40 A.3d 145 (Pa. Super. Ct. 2012).....................................................14

*Birchall v. Countrywide Home Loans, Inc.*,
  No. CIV.A. 08-2447, 2009 WL 3822201 (E.D. Pa. Nov. 12, 2009) .................15

*Bosland v. Warnock Dodge, Inc.*,
  197 N.J. 543 (2009) ...........................................................................10

*Boyes v. Greenwich Boat Works, Inc.*,
  27 F. Supp. 2d 543 (D.N.J. 1998).......................................................10

*Burns v. TD Bank, N.A.*,
  No. 1:21-CV-18194, 2022 WL 17547258 (D.N.J. Dec. 8, 2022) ...............*passim*

*CDK Glob., LLC v. Tulley Auto. Grp., Inc.*,
    No. 15- CV-3103, 2021 WL 1187123 (D.N.J. Mar. 30, 2021) ....................29, 30

*In re Checking Acct. Overdraft Litig.*,
    797 F. Supp. 2d 1312 (S.D. Fla. 2011) ...............................................................28

*In re Checking Acct. Overdraft Litigation*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ...............................................................39

*Columbian Spot, LLC v. Dollar Bank*,
    No. 21-CV-1171, 2022 WL 4610644 (W.D. Pa. Sept. 30, 2022) ......................38

*Cont'l Ins. Co. v. Beecham, Inc.*,
    836 F. Supp. 1027 (D.N.J. 1993) .......................................................................30

*Corona v. PNC Fin. Servs. Grp., Inc.*,
    No. 2:20-CV-06521, 2021 WL 1218258 (C.D. Cal. Mar. 16, 2021) ................35

*Cox v. Sears Roebuck & Co.*,
    138 N.J. 2 (1994) ...............................................................................................10

*Crawford v. Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014) ...............................................................................12

*Cuomo v. Clearing House Ass'n, L.L.C.*,
    557 U.S. 519 (2009)......................................................................................22, 23

*DeAngelis v. Timberpeg E., Inc.*
    51 A.D.3d 1175 (3d Dep't 2008).......................................................................12

*Elias v. Ungar's Food Prod., Inc.*,
    252 F.R.D. 233 (D.N.J. 2008)............................................................................29

*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*,
    949 N.Y.S.2d 115 (2d Dep't 2012)....................................................................37

*Emerson Radio Corp. v. Orion Sales, Inc.*,
    253 F.3d 159 (3d Cir. 2001) .........................................................................36, 37

*Fazio v. Guardian Life Ins. Co. of America*,
    62 A.3d 396 (Pa. Super. Ct. 2012).....................................................................14

*Franklin Nat'l Bank of Franklin Square v. People*,
   347 U.S. 373 (1954) ........................................................................26

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) .............................................................10

*Gardner v. State Farm Fire & Cas. Co.*,
   544 F.3d 553 (3d Cir. 2008) .............................................................13

*Glass v. BMW of N. Am., LLC*,
   No. 10-CV-5259, 2011 WL 6887721 (D.N.J. Dec. 29, 2011) ....................10, 11

*Gutierrez v. Wells Fargo & Co.*,
   622 F. Supp. 2d 946 (N.D. Cal. 2009) ...............................................38

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) ...............................................19, 26, 27

*Hartnett v. Washington Fed. Bank*,
   No. C21-888-RSM-MLP, 2021 WL 6494953 (W.D. Wash. Dec. 7,
   2021) ......................................................................................32, 33

*Hippocratic Growth Maryland Processing, LLC v. Pesce*,
   No. 22-CV-00090, 2022 WL 5245752 (D. Md. Oct. 6, 2022) ...................36

*Hollenshead v. New Penn Fin., LLC*,
   447 F. Supp. 3d 283 (E.D. Pa. 2020) .................................................18

*Hordis v. Cabot Oil & Gas Corp.*,
   No. 3:19-CV-296, 2020 WL 2128968 (M.D. Pa. May 5, 2020) ..................37

*Howards v. Fifth Third Bank*,
   No. 1:18-CV-869, 2023 WL 1778522 (S.D. Ohio Feb. 6, 2023) .............34, 35

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*,
   1 F. Supp. 3d 34 (E.D.N.Y. 2014) ...............................................*passim*

*Hughes v. TD Bank, N.A.*,
   856 F. Supp. 2d 673 (D.N.J. 2012) ................................................11, 18

*International Union of Operating Engineers Local #68 Welfare Fund
   v. Merck & Co.*, 384 N.J. Super. 275 (App. Div. 2006), ......................29

iv

*Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*,
  779 F. Supp. 2d 416 (E.D. Pa. 2011) .................................................................38

*Kelly v. Community Bank, N.A.*,
  No. 8:19-CV-919, 2020 WL 777463 (N.D.N.Y. Feb. 18, 2020) .................17, 19

*Kivett v. Flagstar Bank*,
  333 F.R.D. 500 (N.D. Cal. 2019), *vacated and remanded sub nom*
  *on other grounds, Kivett v. Flagstar Bank, FSB,* No. 21-15667,
  2022 WL 1553266 (9th Cir. May 17, 2022).......................................................35

*Kurns v. A.W. Chesterton, Inc.*,
  620 F.3d 392 (3d Cir. 2010) ...............................................................................26

*Lamoureux v. Trustco Bank*,
  592 F. Supp. 3d 14 (N.D.N.Y. 2022)...........................................................17, 19

*Lee v. Carter-Reed Co.*,
  203 N.J. 496 (2010) ..............................................................................................9

*Lussoro v. Ocean Fin. Fed. Credit Union*,
  456 F. Supp. 3d 474 (E.D.N.Y. 2020) .......................................................*passim*

*Mann v. TD Bank, N.A.*,
  09-CV-1062, 2009 WL 3818128 (D.N.J. Nov. 12, 2009).....................21, 24, 25

*Mariscal v. Flagstar Bank, FSB*,
  No. 19-CV-2023, 2021 WL 4260879 (C.D. Cal. Sept. 9, 2021).........................26

*Martinez v. Wells Fargo Home Mortg., Inc.*,
  598 F.3d 549 (9th Cir. 2010) ..............................................................................26

*McCrobie v. Palisades Acquisition XVI, LLC*,
  359 F. Supp. 3d 239 (W.D.N.Y. 2019)................................................................12

*McDonough v. State Farm Fire & Cas. Co.*,
  365 F. Supp. 3d 552 (E.D. Pa. 2019) ..................................................................17

*McNeil v. Cap. One Bank, N.A.*,
  No. 19-CV-00473, 2020 WL 5802363 (E.D.N.Y. Sept. 29, 2020).............34, 38

*In re Mercedes-Benz Tele Aid Cont. Litig.*,
    267 F.R.D. 113 (D.N.J. 2010), *opinion modified on
    reconsideration*, No. 07-CV-2720, 2010 WL 2976496 (D.N.J. July
    22, 2010) ......................................................................................................30

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009)..............................................................................29

*Morris v. BMW of N. Am., LLC*,
    No. 13-CV-4980, 2014 WL 793550 (D.N.J. Feb. 26, 2014).............................28

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
    875 F.3d 107 (2d Cir. 2017) .............................................................................12

*Noe v. City Nat'l Bank of West Virginia*,
    3:19-CV-0690, 2020 WL 836871 (S.D. W. Va. Feb. 19, 2020) ........................33

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
    38 F.3d 1380 (3d Cir. 1994) ................................................................................4

*Poskin v. TD Banknorth, N.A.*,
    687 F. Supp. 2d 530 (W.D. Pa. 2009)...........................................................21, 27

*Rogers v. Gloucester Twp. Hous. Auth.*,
    14-CV-1268, 2015 WL 132540 (D.N.J. Jan. 9, 2015) ....................................3, 4

*Roy v. ESL Fed. Credit Union*,
    No. 19-CV-6122, 2020 WL 5849297 (W.D.N.Y. Sept. 30, 2020)..............17, 19

*In re Samsung DLP Television Class Action Litig.*,
    No. 07-CV-2141, 2009 WL 3584352 (D.N.J. Oct. 27, 2009) ...........................28

*Schertzer v. Bank of Am., N.A.*,
    No. 19-CV-264, 2022 WL 1004559 (S.D. Cal. Apr. 4, 2022) ..........................34

*Smith v. Jovia Fin. Credit Union*,
    No. 20-CV-04237, 2021 WL 4173655 ..................................................17, 19, 36

*Straumann USA, LLC v. TruAbutment Inc.*,
    No. 8:19-CV-00878, 2019 WL 6887173 (C.D. Cal. Oct. 1, 2019) ...................20

*P.V. ex rel. T.V. v. Camp Jaycee*,
    197 N.J. 132, 962 A.2d 453 (2008) ...................................................................29

*Tannehill v. Simmons Bank*,
  No. 3:19-CV-140, 2019 WL 7176777 (E.D. Ark. Oct. 21, 2019)......................34

*In re TD Bank*,
  150 F. Supp. 3d at 638–39 ...................................................................................18

*In re TD Bank, N.A.*,
  150 F. Supp. 3d 593 (D.S.C. 2015) .....................................................................11

*Toth v. Nw. Sav. Bank*,
  No. GD-12-008014, 2013 WL 8538695 (Pa. Com. Pl. Mar. 1,
  2013) ....................................................................................................................13

*Tri-City Assocs., L.P. v. Belmont, Inc.*,
  2016 S.D. 46, 881 N.W.2d 20.............................................................................36

*USI Ins. Servs. LLC v. Miner*,
  801 F. Supp. 2d 175 (S.D.N.Y. 2011) .................................................................34

*Varga v. Am. Airlines Fed. Credit Union*,
  No. 20-CV-4380, 2020 WL 8881747 (C.D. Cal. Dec. 1, 2020).........................20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.
  Litig.*,
  959 F.3d 1201 (9th Cir. 2020) .............................................................................24

*Walkingstick v. Simmons Bank*,
  No. 6:19-CV-03184, 2020 WL 249473 (W.D. Mo. Jan. 16, 2020) ............33, 34

*Watters v. Wachovia Bank, N.A.*,
  550 U.S. 1 (2007)...........................................................................................21, 23

*White v. Wachovia Bank, N.A.*,
  563 F. Supp. 2d 1358 (N.D. Ga. 2008).........................................................20, 39

## Rules & Statutes

73 Pa. Stat. Ann. § 201 ...................................................................................13, 14

12 U.S.C. § 25b(b)(1)(B) .......................................................................................22

12 C.F.R. § 7.4007(c)..............................................................................................22

12 C.F.R. § 7.4008(c)..............................................................................................25

15 U.S.C. 45(a)(1) .................................................................................................25

California Commercial Code § 4303(b) ...............................................................27

N.J.S.A. § 56:8-2 ...................................................................................................10

New York's General Business Law § 349 ............................................11, 12, 17, 20

## I.     INTRODUCTION

Plaintiffs Cathy LaFurge and Monica O'Rourke challenge a "junk" fee practice used by Defendant TD Bank ("TD" or "the Bank") to assess fees when an attempted deposit fails. TD charges so-called Cashed or Deposited Item Returned Fees ("Return Fees") on deposits that are attempted into TD accounts, but which fail because they could not be processed against the originator's account. While TD may rightfully charge Return Fees in certain circumstances, it may not do so where *nothing actually happened*: when (as occurred with Plaintiffs' attempted deposits) no funds from an attempted deposit were ever made available on an account, TD never had to recoup such funds from an accountholder, and indeed where the attempted deposit was never actually "Cashed or Deposited." What's worse, TD also assesses *both* a Return Fee *and* overdraft fees when it supposedly reverses deposits that never even happened—doubling the pain it inflicts on accountholders for this non-event.

As the Consumer Financial Protection Bureau (CFPB) recently recognized, such Return Fees are a classic "junk" fee and are inherently unfair, deceptive, and unlawful because "a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account." *See*

1

Compl., Ex. C (ECF No. 27-4). For that reason, the CFPB explicitly stated it considers the assessment of such fees "unfair" under the federal Consumer Financial Protection Act—*regardless* of whether such fees were adequately disclosed by banks. Here, not only does TD charge these inherently unfair fees, but it misrepresents the circumstances in which it will do so.

Apparently conceding it has not acted in accordance with the terms of its adhesion contract, TD's Motion to Dismiss does ***not*** argue that the assessment of Return Fees or the assessment of Return Fees and overdraft fees on the same attempted deposit ("Double Fees") are authorized by its contract. Instead, TD argues that Plaintiffs and class members were required to report such fees to TD as "errors" within 30 days. But as numerous courts have held when analyzing materially identical "error" resolution provisions, the fees at issue were not "errors" or mistakes at all, but instead a conscious policy that the Bank had adopted. It cannot be an "error" to do what TD did intentionally, to maximize its own fee revenue. Thus, the provision is inapplicable.

Plaintiffs also state claims under New Jersey's, New York's, and Pennsylvania's consumer protection acts (the "Acts"). First, Return Fees of any type are "unfair" under each of the Acts because, as noted by the CFPB in deeming such fees unfair under the analogous Consumer Financial Protection Act, consumers have no control over when such fees are charged. Second, and even if the fee practices

were not unfair on their own, Plaintiffs' claims are actionable under the Acts because TD mispresents its Return Fee and Double Fee practices. As TD tacitly concedes, the Bank's disclosures state that TD will only charge Return Fees in a single circumstance: when TD provides money to an accountholder for a deposited check, that check later bounces, and TD must recoup those funds from the accountholder. But, as happened to Plaintiffs, TD charges Return Fees even when TD *never* provided money to an accountholder and *never* had to recoup those funds from an accountholder. In short, there was never a "deposit" that had to be "returned." Instead, TD charges Return Fees each time an accountholder merely *attempts* to unsuccessfully deposit a check. Further, the relevant disclosures plainly state there will be no Double Fee in the above circumstance either. Because TD misled accountholders as to its fee assessment practices, Plaintiffs adequately allege TD engaged in fraudulent and deceptive conduct.

For each of these reasons and as discussed further below, TD's Motion should be denied in full.

## II.   LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Rogers v. Gloucester Twp. Hous. Auth.*, 14-CV-1268, 2015 WL 132540, at *2 (D.N.J. Jan. 9, 2015) (quoting *Ashcroft*

3

*v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when the plaintiffs plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a complaint's allegations, a court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." *Id.* (quoting *Bistrian v. Levi*, 696 F.3d 352, 352 n.1 (3d Cir. 2012)). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing *Chester Cty. Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)).

## III.   FACTUAL BACKGROUND

In January 2023, Plaintiff LaFurge attempted a deposit into her TD account. Compl., ¶ 40. To Plaintiff LaFurge's surprise, and through no fault of her own, Plaintiff's attempted deposit failed, and Plaintiff was charged a $15.00 Return Fee on January 12, 2023. *Id*. ¶ 43. The attempted deposit was never actually credited to her account. *Id.* ¶ 41. Plaintiff LaFurge was also assessed an overdraft fee on the next day, January 13, 2023, purportedly for TD removing the funds it had deposited into her account. But TD had never actually credited the funds to Plaintiff LaFurge's

account, and it could not therefore have removed the funds from Plaintiff LaFurge's account much less charged an overdraft fee for doing so. *Id.* ¶ 44. Plaintiff LaFurge is a resident and citizen of Pennsylvania. *Id.* ¶ 9.

Similarly, in January 2023, Plaintiff O'Rourke attempted to deposit a check into her TD account. Compl. ¶ 46. To Plaintiff O'Rourke's surprise, and through no fault of her own, Plaintiff's attempted deposit failed, and Plaintiff was charged a $15.00 Return Fee on January 17, 2023. *Id.* ¶ 48. The attempted deposit was never actually credited to her account. *Id.* ¶ 47. Plaintiff O'Rourke is a resident and citizen of New York. *Id.* ¶ 10.

## IV.   ARGUMENT

### A.  Plaintiffs State Claims Under State Consumer Protection Acts

When a consumer deposits a check, she has no way of knowing whether that check will bounce. A check may bounce for a myriad of reasons entirely unrelated to the actions of the depositor. Perhaps the writer of the check lacked sufficient funds to pay the check; perhaps the account at the financial institution from which the check was written was closed; or perhaps the check included erroneous or missing information. Despite the fact that TD accountholders have no control over whether a check bounces, and no practical way to avoid it, the unlucky depositors of bounced checks not only have no access to the funds they deposited, but are assessed hefty fees for the mere attempt.

Because such fees are not reasonably avoidable, and because they are charged "even where the depository institution incurs **no such loss** from the returned transaction," the CFPB has deemed the imposition of Return Fees "unfair" under federal consumer protection law and warned financial institutions such as TD to stop charging them. For the same reasons the assessment of Return Fees is "unfair" under federal law, so too under state law. TD's blanket policy of charging un-preventable Return Fees is unfair under each of the Acts.

But beyond being unfair, TD also misrepresents the circumstances under which it will charge Return Fees. The Fee Schedule at issue—a marketing document in which the Bank shows accountholders and potential accountholders which fees will be charged in which circumstances—states:

Cashed or Deposited Item Returned Fees…..$15

Compl., Ex. B (ECF No. 27-3). The name of the fee itself has a plain, commonsense meaning: if an item is "cashed" or "deposited," but then later returned, a fee may be assessed. The mere returning of a deposit is not enough to trigger a fee – it must also have been cashed or deposited. After all, the fee at issue is called a Cashed or Deposited Item Returned Fee, not a "Cashing Attempt or Deposit Attempt Fee."

In common usage, to "cash" a check is to give your bank a check *and* receive physical cash in return; a bank provides cash and the accountholder walks out the door with it, such that the funds are no longer in the bank's control. "Deposited" has

6

an analogous common meaning: to provide your bank a check and to receive access to and actually use the funds deposited. In short, the terms "deposited or cashed" must refer *what the bank does* (provide the funds) and not merely what the accountholder does (present the bank a check). An accountholder cannot "cash" or "deposit" a check on his own; as the saying goes, "it takes two to tango." Here, while Plaintiffs did indeed present their bank with a check, TD indisputably never provided Plaintiffs access to their attempted deposit in cash or otherwise and Plaintiffs never used any portion of the funds. The checks were therefore never "deposited or cashed."

The fine print of the contracts double down on the deception. Specifically, TD promises it will ***only*** charge Return Fees and overdraft fees when it provides accountholders a provisional credit, and then must reverse that credit:

**Deposit Policy**
We may refuse to accept an item for deposit or to return all or a part of it to you. Any item that we accept for deposit is subject to later verification. We will usually give you provisional credit for items deposited into your Account. However, we may delay or refuse to give you provisional credit if we believe in our discretion that your item will not be paid. <u>We will reverse any provisional credit we have given for an item deposited into your Account if we do not receive final credit for that item, and charge you a fee (see Personal Fee Schedule). **<u>If the reversal of a provisional credit creates an overdraft</u>** in your Account, you will owe us the amount of the overdraft, plus any overdraft fees when applicable (see Personal Fee Schedule)</u>. We will determine when final credit is received for any item. Please read the Funds Availability Policy for a detailed discussion of how and when we make funds available to you.

7

Compl., Ex. A (ECF No. 27-2), at 5 (emphasis added).

But as happened to Plaintiffs, TD routinely charges Return Fees and overdraft fees even when there was no "reversal of a provisional credit." That TD will only assess such fees when it has actually provided such a provisional credit is further emphasized in other provisions of its account agreement as well. For example, TD promises:

> **Returned Checks/Waiver of Rights**
> If you deposit a check or item in your Account that the drawee bank returns unpaid for any reason (called "dishonor"), <u>the amount of the dishonored check or item will be **_deducted_** from your Account</u>…You agree to pay the Bank a fee for any such check or item that is dishonored (see Personal Fee Schedule). The Bank may also collect any amounts due to the Bank because of returned checks, through the right of set-off, from any other of your Accounts at the Bank, or collect the funds directly from you.
>
> . . .
>
> **Cashing of Checks**
> Typically, the Bank will cash checks drawn on other banks for its Customers who have adequate available funds in their Account(s). If any such check should be returned by the paying bank for any reason, the Bank will charge you a fee (see Personal Fee Schedule). In addition, <u>the Bank will **_debit_** the amount of the returned check from your Account</u>(s). If the debit creates an overdraft in your Account, you will owe us the amount of the overdraft plus any overdraft fees when applicable (see Personal Fee Schedule).

*Id.* at 6 (emphasis added).

The above provisions reiterate the same premise: there will be no Return Fees assessed where the funds were not actually made available to the accountholder.

After all, an amount can only be "deducted" or "debited" from an account where it has been previously provided.

Yet another provision makes these same promises yet again—where funds from an attempted deposit are made available and then it is later determined that the deposit was not valid, it is <u>only</u> in that circumstance that an overdraft fee may be assessed:

> **Returned Items Subsequent to Availability of Funds**
> If a check or other item you deposited to your Account is returned to us unpaid ***after the funds have been made available to you***, the amount of the check or other item will be deducted from your Account. If there are insufficient funds in your Account, we reserve the right to demand payment directly from you and to charge you for the overdraft, if applicable, as posted in our most recent Personal Fee Schedule.

*Id.* at 46.

But again, TD charges Return Fees and overdraft fees even when no funds were ever made "available" to the accountholder. Tellingly, TD does not argue that its account documents authorize its fee assessment practices. They plainly do not. In misleading accountholders as to the circumstances of when it will assess Return Fees and overdraft fees, TD violates the Acts.

### 1.  The New Jersey Consumer Fraud Act

The NJCFA "provides relief to consumers from 'fraudulent practices in the market place.'" *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010) (quoting *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11 (2004)). Because it is remedial legislation,

"courts have declared that the Consumer Fraud Act should be construed liberally in favor of protecting customers." *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 547 (D.N.J. 1998) (quotations omitted). To succeed on a NJCFA claim, a plaintiff must prove: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). An unlawful practice under the NJCFA is "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise." N.J.S.A. § 56:8-2.

Under the NJCFA, "unlawful practices fall into one of three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007); *Glass v. BMW of N. Am., LLC*, No. 10-CV-5259, 2011 WL 6887721, at *4–5 (D.N.J. Dec. 29, 2011); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). The "prime ingredient" underlying all types of unlawful conduct is its "capacity to mislead." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (quoting *Cox*, 138 N.J. at 17) ("The capacity to mislead is the prime ingredient of all types of consumer fraud"). "Importantly, the conduct, whether it be an omission or active

misrepresentation, must be made in connection with the sale of advertisement of a product or service." *Id.* (internal citation and quotation omitted).

"Aside from that common element, differences exist among allegations of affirmative acts and omissions." *Glass*, 2011 WL 6887721, at *5. "[A]llegations of an affirmative act, *i.e.,* a misrepresentation, do not require a showing of intent or even actual deceit or fraud." *Id.* "One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." *Id.* (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997)). "Nor must the representation be one of material fact" in order to be actionable. *Arcand*, 673 F. Supp. 2d at 297.

Notably, prior class actions against TD Bank regarding the Bank's fees have allowed claims under the NJCFA to proceed. *E.g.*, *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 638–39 (D.S.C. 2015); *Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 681 (D.N.J. 2012) (denying dismissal of challenge to overdraft fees under NJCFA); *Burns v. TD Bank, N.A.,* No. 1:21-CV-18194, 2022 WL 17547258, at *9–10 (D.N.J. Dec. 8, 2022) (same).

### 2. New York's General Business Law § 349

"To state a claim under GBL § 349, a plaintiff 'must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result

11

of the deceptive act.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000)). New York courts make it clear that "Section 349 on its 'face applies to virtually all economic activity, and its application has been correspondingly broad.'" *McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 254 (W.D.N.Y. 2019) (quoting *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999)) (cleaned up); *see also Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 490 (E.D.N.Y. 2020).

Because the purpose of Section 349 is to be highly protective, the test "is not whether it is deceptive to the hypothetical reasonable person, but to the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." *DeAngelis v. Timberpeg E., Inc.* 51 A.D.3d 1175, 1178 (3d Dep't 2008) (quotation omitted).

It is not necessary under Section 349 that a plaintiff establish the defendant's intent to defraud or mislead. *E.g.*, *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017). "Rather, the term 'deceptive practice' in Section 349 [has been] interpreted to mean acts which are dishonest or misleading in a material respect." *Id.* (quotation omitted).

### 3. Pennsylvania's UTPCPL

The Pennsylvania UTPCPL forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Stat. Ann. § 201-3. "[T]he UTPCPL is designed to protect the public from fraud and deceptive business practices." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008). It provides a private cause of action for "[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" due to the seller's unfair or deceptive acts or practices. 73 Pa. Stat. Ann. §201-9.2(a).

Under the UTPCPL, the clear and unambiguous wording of the statute requires pleading and proof of just four elements: (1) that the defendant committed an unfair or deceptive act or practice; (2) that the consumer purchased or leased goods or services for personal, family or household purposes; (3) that the consumer suffered an ascertainable loss of money or property; and (4) that the loss was "as a result of" the defendant's unfair or deceptive act or practice. 73 P.S. §§ 201-2(4), 201-3, 201-9.2(a); *see Toth v. Nw. Sav. Bank*, No. GD-12-008014, 2013 WL 8538695 (Pa. Com. Pl. Mar. 1, 2013). Thus, the UTPCPL, as amended, does not include a justifiable reliance element.

Indeed, justifiable reliance was an element that derived from pre-1996 amendment cases which required a plaintiff to prove common law fraud. The 1996

amendment however, added a catch-all provision allowing a plaintiff to bring a claim against a defendant for "other fraudulent or deceptive conduct." 73 P.S. §201-2(4)(xxi). A plaintiff bringing a claim under the catch-all provision need *not* prove all the elements of common law fraud. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151–56 (Pa. Super. Ct. 2012); *see also Fazio v. Guardian Life Ins. Co. of America*, 62 A.3d 396, 409–10 (Pa. Super. Ct. 2012).

In *Bennett*, the Superior Court concluded that the 1996 amendment which included "deceptive" conduct to the catch-all provision of the act demonstrated the General Assembly's intent to broaden the statute and allow Plaintiff's to assert claims even without proof of the elements of common law fraud. *Bennett*, 40 A.3d at 154. The court noted that since the 1996 amendment there have been superior court cases requiring proof of common law fraud. However, the court also noted that those cases were distinguishable because they relied on pre-amendment interpretations of the catch-all provision and/or failed to discuss the significance of the 1996 amendment. *Id.* at 155. After careful consideration, the Superior Court in *Bennett* found that "maintaining a standard that demands fraud even after the amendment would render the legislature's addition of "deceptive" redundant and meaningless in a manner inconsistent with well-established principles of statutory interpretation." *Bennett*, 40 A.3d at 154. *Bennett* has now made it clear that the elements of common law fraud – including justifiable reliance – do *not* need to be

plead or proven to state a claim under the catchall provision of the UTPCPL. *See also Birchall v. Countrywide Home Loans, Inc.*, No. CIV.A. 08-2447, 2009 WL 3822201, at *10 (E.D. Pa. Nov. 12, 2009) ("[T]he Court will join others in this district to permit a plaintiff who alleges deceptive conduct to proceed without alleging all of the individual elements of common law fraud.").

### 4. Plaintiffs Consumer Protection Claims Are Not Duplicative of their Breach of Contract Claims

Plaintiffs have sufficiently alleged the requisite elements of each of the foregoing consumer protection act claims. Specifically, Plaintiffs allege that TD misleads its accountholders in its account documents as to the circumstances in which it will assess Return Fees and that they suffered damages as a result of TD's deceptive conduct, *i.e.*, the assessment of Return Fees and Double Fees. Plaintiffs also allege the assessment of such Return Fees was unfair and unconscionable under state law because, as explained by the CFPB, Plaintiffs and other accountholders had no control over when or whether such fees would be assessed. These allegations are sufficient to support claims under each state's consumer protection statute.

In moving to dismiss, TD argues that Plaintiffs' claims under the Acts are duplicative of their breach of contract claims. This argument, however, overlooks that Plaintiffs make specific allegations that TD engaged in deceptive, misleading, and unfair conduct. *See, e.g.*, Compl., ¶ 3 ("TD Bank's practice is unlawful, unfair, deceptive and in violation of state consumer protection laws because Plaintiffs and

the putative class members have no control over whether the item attempted for deposit would be returned."); ¶ 24 ("It is unfair and deceptive to charge mis-named Cashed or Deposited Item Returned Fees even where no 'cashing' or 'deposit' has occurred. The fee is not, after all, called an Attempted Cashed or Attempted Deposited Item Returned Fee."); ¶ 82 ("TD Bank intentionally and knowingly misrepresented and/or intentionally and knowingly omitted material facts regarding its accounts and its [fee] practices with an intent to mislead Plaintiffs and the Classes"). As these allegations make clear, Plaintiffs' state statutory claims are *not* merely duplicative of their breach of contract claims.

Notably, Judge Williams in *Burns v. TD Bank, N.A.*, 2022 WL 17547258 addressed the same argument, also raised by TD in that case, and rejected it. *Id.* at *9.

> The Court first addresses TD's duplicity argument with respect to the New Jersey Plaintiffs' claim under the CFA . . . Here, the New Jersey Plaintiffs allege that TD, as the sole author of the Account Agreement, deceptively misrepresented the true nature of its overdraft practices; employed overdraft practices that were contrary to the overall net impressions the Account Agreement worked to create; and did so for the purpose of increasing its overdraft-fee revenue. These allegations are sufficient to plead substantial and aggravating circumstances. *See Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 681 (D.N.J. 2012) (permitting CFA claim to proceed where plaintiffs alleged that defendant "used its superior bargaining position and sophistication to develop a counterintuitive system of gouging those customers least able to afford overdraft fees"). Whether TD's overdraft practices are "unconscionable" is a consideration reserved for a factfinder. *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997).

*Id.* The same analysis applies here.

The result is no different under New York law. Like Judge Williams in *Burns*, numerous courts have declined to dismiss GBL claims as duplicative of breach of contract claims. *See, e.g.*, *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 41 (N.D.N.Y. 2022) ("[T]he Second Circuit in *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.* permitted co-existence of a breach-of-contract claim and a GBL § 349 claim. . . . The Court therefore declines to dismiss Plaintiff's GBL § 349 cla[i]m on this ground at this time."); *Richard*, 2021 WL 810218, at *16 ("The Court also declines to dismiss Plaintiff's § 349 claim as duplicative of her breach of contract claim."); *Lussoro,* 456 F. Supp. 3d at 492 (holding plaintiff adequately alleged a claim under the GBL in overdraft fee cases case); *Smith v. Jovia Fin. Credit Union*, No. 20-CV-04237, 2021 WL 4173655, at *1, *report & recommendation adopted*, 2021 WL 4173069 (E.D.N.Y. Sept. 14, 2021) (same); *Roy v. ESL Fed. Credit Union*, No. 19-CV-6122, 2020 WL 5849297, at *8–9 (W.D.N.Y. Sept. 30, 2020) (same); *Kelly v. Community Bank, N.A.*, No. 8:19-CV-919, 2020 WL 777463, at *9 (N.D.N.Y. Feb. 18, 2020)  (same).

The law in Pennsylvania is the same. *McDonough v. State Farm Fire & Cas. Co.,* 365 F. Supp. 3d 552, 559 (E.D. Pa. 2019) (Extensively analyzing the issue and concluding that a UTPCPL claim may co-exist with a breach of contract claim);

17

*Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 288 (E.D. Pa. 2020) (same).

### 5. Plaintiffs Allege Causation

Next, Plaintiffs have adequately alleged causation under each of the Acts. As established above, none of the Acts at issue impose a reliance requirement. *See supra*. Plaintiffs have alleged an ascertainable loss – the assessment of Return Fees and overdraft fees – as a result of TD's conduct. Compl. ¶ 84 ("TD Bank's conduct proximately caused injuries to Plaintiffs and the other members of the Class. Plaintiffs and the other members of the Classes were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of TD Bank's conduct in that Plaintiffs and the other Class members should not have been charged Cashed or Deposited Item Returned Fees on bounced checks"); ¶ 85 ("These injuries are the direct and natural consequence of TD Bank's misrepresentations and omissions."); *see also* Compl. ¶¶ 43, 44, 48, 93, 95, 98. That is all that is required under each of the Acts.

Similar allegations have been found sufficient to state claims against TD and other financial institutions regarding other fee assessment practices. *See, e.g.*, *In re TD Bank*, 150 F. Supp. 3d at 638–39; *Hughes*, 856 F. Supp. 2d at 681; *Burns*, 2022 WL 17547258, at *10; *Abramson v. Affinity Federal Credit Union*, No. CV2013104MASDEA, 2021 WL 3885325, at *5 (D.N.J. Aug. 31, 2021);

*Lamoureux*, 592 F. Supp. 3d at 42; *Richard*, 2021 WL 810218, at *16; *Lussoro,* 456 F. Supp. 3d at 492; *Smith,*, 2021 WL 4173655, at *1, *report and recommendation adopted*, 2021 WL 4173069 (E.D.N.Y. Sept. 14, 2021); *Roy*, 2020 WL 5849297, at *8-9; *Kelly*, 2020 WL 777463, at *10.

### 6.  Plaintiffs' Claims Are Not Preempted

TD contends that the National Bank Act ("NBA") preempts Plaintiffs' claims under the Acts to the extent Plaintiffs base their claims on "unfair" conduct. Mot. at 16–20. TD is wrong because Plaintiffs' state law claims are consistent with and supported by federal law and guidance.

At the outset, it bears noting that TD acknowledges Plaintiffs' breach of contract claim is not preempted, nor are Plaintiffs' consumer protection claims to the extent they are based on TD's *misrepresentations* in its account documents. This admission is likely because courts (and even TD's own cited authority) roundly reject preemption defenses regarding such claims. *See, e.g.*, *Burns*, 2022 WL 17547258, at *13 ("Numerous federal courts have observed that state consumer fraud claims, as well as the statutes underlying them, are not conflict-preempted because they do not 'impose disclosure requirements but merely prohibits statements that are likely to mislead the public.'" (quoting *Gutierrez v. Wells Fargo Bank, NA,* 704 F.3d 712, 726 (9th Cir. 2012)); *Gutierrez*, 704 F.3d at 726 (holding claims "based on Wells Fargo's misleading statements about its posting method" under the

fraudulent prong of state unfair competition law were not preempted because that law "does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public."); *Varga v. Am. Airlines Fed. Credit Union*, No. 20-CV-4380, 2020 WL 8881747, at *5 (C.D. Cal. Dec. 1, 2020) ("[A]ffirmative misrepresentation claims are not federally preempted, even if the result of those claims may affect a federal credit union's fee disclosures." (quoting *Lambert v. Navy Fed. Credit Union*, 1:19-cv-103, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019))); *Lussoro*, 456 F. Supp. 3d at 489 (finding claim made under New York's General Business Law § 349 not to be preempted).

TD's tacit concession that the NBA does not preempt misrepresentation claims under the Acts is dispositive: "A motion to dismiss is not appropriately directed to particular theories of liability, but only to a claim in its entirety." *Straumann USA, LLC v. TruAbutment Inc.*, No. 8:19-CV-00878, 2019 WL 6887173, at *4 (C.D. Cal. Oct. 1, 2019). Here, Plaintiffs' claims regarding the unfairness of TD's practices "are intertwined with" their claims that TD's practices were deceptive and fraudulent. *See White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1369 n.15 (N.D. Ga. 2008). Since TD has conceded that Plaintiffs' have stated valid claims under the Acts "[a]s a whole," the Court should not dismiss one small part of Plaintiffs' claims under the Acts.

Notwithstanding TD's failure to challenge Plaintiffs' claims under the Acts as a whole, Plaintiffs' claims alleging TD's conduct was "unfair" are not preempted. Courts—including in this circuit and district—have consistently denied motions to dismiss state UDAP claims where the applicable state law provision is "a law of general applicability, and not targeted directly at banking or lending." *Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 556 (W.D. Pa. 2009) (denying motion to dismiss claim under Pennsylvania Unfair Competition Law and Consumer Protection Law). "In contrast to findings of federal preemption in cases involving specific state regulations that conflict with the NBA, causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted." *Baldanzi v. WFC Holdings Corp.,* No. 07-CV-9551, 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008); *see Mann v. TD Bank, N.A.*, 09-CV-1062, 2009 WL 3818128, at *5 (D.N.J. Nov. 12, 2009) (no preemption of NJCFA claim because "the law simply requires all actors to conform to a generally applicable code of conduct regardless of the nature of their business").

It is well established that "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or purposes of the NBA." *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 11 (2007). This balance of state and federal authority "honor[s] in fact rather than merely in theory Congress's decision not to preempt substantive state law" and

"echoes many other mixed state/federal regimes in which the Federal Government exercises general oversight while leaving state substantive law in place." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (citing *Wyeth v. Levine,* 555 U.S. 555 (2009)). Consequently, state consumer protection statutes, like the ones Plaintiffs advance here, are preempted by the NBA "only if" they "prevent[] or significantly interfere[] with the exercise by the national bank of its powers."[1] 12 U.S.C. § 25b(b)(1)(B); *see also Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). Tellingly, even the OCC's own regulations on preemption specify that various state laws – including the laws of "contracts" and "torts" – "apply to national banks" and "are not preempted" when they "are not inconsistent with the deposit-taking powers of national banks." 12 C.F.R. § 7.4007(c).

At this stage, "the Court's only inquiry . . . is whether the state law claims, as alleged, more than incidentally affect the exercise of the banks' deposit taking power." *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*, 1 F. Supp. 3d 34, 51 (E.D.N.Y. 2014) (quoting *In re Checking Acct. Overdraft Litigation,*

---

[1] Tellingly, TD repeatedly attempts to water down this Congressionally drawn standard, at one point arguing that preemption applies when "any state statute . . . *impos[es] conditions* on a national bank's exercise of its expressly authorized national banking powers." *See* Mot. at 17 (emphasis added). TD's commentary is at odds both with the plain language of § 25b(b)(1)(B) and, as set forth further below, abundant case law applying § 25b(b)(1)(B).

694 F. Supp. 2d 1302, 1313 (S.D. Fla. 2010)). Plaintiffs' claims under the Acts, as alleged, do not affect TD's deposit-taking power and are therefore not preempted.

The Supreme Court has made clear that "[f]ederally chartered banks are subject to state laws of general application." *Watters,* 550 U.S. at 11; *see also Cuomo*, 557 U.S. at 534 ("States . . . have always enforced their general laws against national banks—and have enforced their banking-related laws against national banks for at least 85 years . . . ."). Since "Plaintiffs' claims arise out of state laws of general application," those claims "can hardly be said to implicate, much less significantly impair, TD's deposit-taking powers under the NBA." *Burns*, 2022 WL 17547258, at *13.

Here, the Acts are "'state laws of general application that do not vitiate the purposes of the NBA, and banks could comply with both the NBA, OCC regulations[,] and state laws if they refrained from engaging in the criticized posting procedures.'" *In re HSBC*, 1 F. Supp. 3d at 46 (quoting *In re Checking Acct. Overdraft Litigation,* 694 F. Supp. 2d at 1313). Plaintiffs' state UDAP claims do not seek to "prohibit any behavior required by the NBA or the OCC regulations" or "require national banks to do anything prohibited by federal law." *Id.* at 45 (quoting *Levin v. HSBC Bank USA, N.A.,* Index No. 650562/2011, 2012 WL 7964121, 2012 N.Y. Slip Op. 33164(U), at *10 (Sup.Ct. N.Y. County June 26, 2012)).

Moreover, federal law preempts state law only when state law contradicts or usurps federal law. *See In re HSBC*, 1 F. Supp. 3d at 44 (citing *Barnett Bank of Marion Cty.*, 517 U.S. at 32). "The basic principle is as follows: 'If federal law imposes restrictions or confers rights on private actors and a state law confers rights or imposes restrictions *that conflict with* the federal law, the federal law takes precedence and the state law is preempted.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,* 959 F.3d 1201, 1211 (9th Cir. 2020) (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. ——, 138 S. Ct. 1461, 1480, 200 L.Ed.2d 854 (2018)) (emphasis added).

Here, however, federal law is *consistent* with Plaintiffs' interpretation of state law, because the CFPB has already deemed these same fees to be unfair under federal law. *See* Compl., Ex. C. Indeed, Plaintiffs seek to employ state law in a manner consistent with federal guidance and federal law.

What's more, it is "significant that OCC appears to envision that certain state laws unfair or deceptive practices will remain enforceable against national banks." *Mann*, 2009 WL 3818128, at *7 (citing *Augustine v. FIA Card Servs., N.A.,* 485 F. Supp. 2d 1172, 1175 (E.D. Cal. 2007) (quoting Office of the Comptroller of the Currency, Advisory Letter 2002–03, at 3 n.2 (Mar. 22, 2002) ("A number of state laws prohibit unfair or deceptive acts or practices, and such laws may be applicable

to insured depository institutions.")[2]; *cf.* 12 C.F.R. § 7.4008(c) ("A national bank shall not engage in unfair or deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), and regulations promulgated thereunder in connection with loans made under this § 7.4008."). Moreover, the CFPB has specifically determined that the fee policy at issue here is "unfair" under federal law. *See* Compl., Ex. C (ECF No. 27-4).[3] "Thus, far from conflicting in the ordinary sense of the word, it appears that federal law discourages the same sort of conduct Plaintiff alleges violates New Jersey law." *Mann*, 2009 WL 3818128, at *5. In short, "'National banks can thus simultaneously comply with the state and federal laws at issue." *In re HSBC*, 1 F. Supp. 3d at 45 (quoting *Levin*, 2012 WL 7964121, at *10).

---

[2]  Advisory Letter 2002-03 is available at: https://www.occ.treas.gov/news-issuances/advisory-letters/2002/advisory-letter-2002-3.pdf.

[3] TD's contention that the Court should wholly disregard the CFPB's 2022 bulletin (*see* Mot. at 19–20) is baseless. Contrary to TD's unsupported arguments, the OCC's own Advisory Letter 2002-03 makes clear that numerous other federal laws (and state laws) apply to national banks' conduct. *See* OCC Advisory Letter 2002-03, at 3–7, available at: https://www.occ.treas.gov/news-issuances/advisory-letters/2002/advisory-letter-2002-3.pdf (identifying, *inter alia*, the Federal Trade Commission Act, the Truth In Lending Act, the Equal Credit Opportunity Act, and the Fair Debt Collection Practices Act as other statutes and regulations that may govern national banks' conduct in relation to unfair and deceptive practices). Consequently, the CFPB bulletin is a powerful signal that TD's unfair practices are also prohibited under federal law.

The cases upon which TD relies[4] present the opposite scenario from that here: statutes specifically targeting—and directly conflicting with—powers explicitly granted by the NBA. *See Barnett Bank of Marion Cty.*, 517 U.S. at 37 (Florida statute directly curtailed the power of a national bank to sell insurance); *Franklin Nat'l Bank of Franklin Square v. People*, 347 U.S. 373, 375–79 (1954) (New York statute prohibiting national banks from using the word "savings" in their advertising). Correspondingly, TD also relies upon cases where a state law of general applicability was the basis for a claim categorically challenging a power explicitly granted by the NBA and the OCC's regulations. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 556 (9th Cir. 2010) (challenging bank fees as "too high" and "ask[ing] the court to decide how much an appropriate fee would be," even though the OCC's regulations have "clearly provided how the bees are to be determined").

In *Gutierrez*, another case TD cites, a state statute directly limited a bank's ability to order the posting of debits and checking charges. *See* 704 F.3d at 717 ("Gutierrez alleged that Wells Fargo's 'resequencing' practices are unfair because

---

[4] TD appears to rely heavily on cases that ***do not*** involve the NBA or do not involve preemption at all. *See* Mot. at 17 (citing *Mariscal v. Flagstar Bank, FSB*, No. 19-CV-2023, 2021 WL 4260879, at *5 (C.D. Cal. Sept. 9, 2021) and *Kurns v. A.W. Chesterton, Inc.*, 620 F.3d 392, 395 (3d Cir. 2010)). For instance, *Kurns* involves preemption of asbestos personal injury claims under the Locomotive Inspection Act, which occupies the field regarding locomotive safety. This consumer protection in banking suit involves the NBA, which does not occupy the field of permissible regulation. Ever further afield, *Mariscal* does not involve preemption at all.

they contradict the legislative policy expressed in California Commercial Code §
4303(b) 1992 Amendment cmt. 7 . . . .”). The “unfairness” claim in *Gutierrez* was
preempted for precisely this reason: “Designation of a posting method falls within
the type of overarching federal banking regulatory power that is not normally limited
by, but rather ordinarily pre-empt[s], contrary state law.” *Id.* at 723 (internal
quotation omitted); *see also id.* at 725 (Holding UCL “unfair” claim “is preempted
when applied in a manner that prevents or significantly interferes with a national
bank’s federally authorized power to choose a posting order.”). Importantly, in
*Gutierrez* – unlike the situation here – no federal law or guidance dictated that it was
“unfair” to post transactions from high-to-low. Instead, federal law stated the
opposite: that a bank was free to choose its own posting order, provided the bank’s
disclosures regarding its posting order were clear and not misleading.

Likewise, *Baptista v. JP Morgan Chase Bank, N.A.* turned on whether the
NBA preempted a state statute that directly targeted a power explicitly granted by
the NBA. *See* 640 F.3d 1194, 1196 (11th Cir. 2011) (“The Florida statute at issue
specifically prohibits a bank from “settl[ing] any check drawn on it otherwise than
at par.” (quoting Fla. Stat. § 655.85)). As one court summarized the limited scope of
*Baptista*’s holding:

> *Baptista* was concerned with a state statute that specifically sought to
> delimit federally-granted authority to banks to charge fees to their
> customers and directly interfered with that right. As such, the Eleventh
> Circuit was faced with the question of whether a state statute,

27

purposefully directed at impinging upon the NBA federal legislation, can serve as a basis for recovery. Unsurprisingly, the Eleventh Circuit found that the state statute was preempted not only because it was intended to undermine the NBA, but also because it had more than an incidental impact upon a bank's authority.

*In re Checking Acct. Overdraft Litig.*, 797 F. Supp. 2d 1312, 1321 (S.D. Fla. 2011).

To the contrary, here there is no federally conferred right to charge Return Fees. In fact, the opposite is true: the CFPB has made clear that the blanket imposition of Return Fees is categorically "unfair" under the CFPA. *See* Compl., Ex. C. There is no preemption when federal law prohibits the exact same conduct as state law, for the same reasons.

### 7. Plaintiffs' NJCFA Claim Should Not be Dismissed Based on a Premature Choice of Law Analysis

Finally, TD urges dismissal of Plaintiffs' NJCFA claim on choice of law grounds. As an initial matter, this issue should not be resolved at the pleading stage. As TD acknowledges in a footnote, discovery may influence the choice of law analysis. *See* Mot. at 24 n. 12. Choice of law analysis is premature on the pleadings. *See In re Samsung DLP Television Class Action Litig.*, No. 07-CV-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) ("[I]t can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place."); *Morris v. BMW of N. Am., LLC*, No. 13-CV-4980, 2014 WL 793550, at *11 (D.N.J. Feb. 26, 2014) (Declining to apply choice of law analysis

at pleadings stage); *Bang v. BMW of N. Am., LLC,* No. 15-CV-6945, 2016 WL 7042071, at *5 (D.N.J. Dec. 1, 2016) (same).

Moreover, TD is incorrect that Plaintiffs may not allege claims under the NJCFA merely because they are not New Jersey residents. *Cf. International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co.*, 384 N.J. Super. 275, 304 (App. Div. 2006), *rev'd on other grounds*, 192 N.J. 372 (2007) (applying NJCFA to nationwide conduct by company headquartered in New Jersey); *see also In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 66–67 (D.N.J. 2009) (same); *Elias v. Ungar's Food Prod., Inc.,* 252 F.R.D. 233, 248 (D.N.J. 2008) (same).

Under New Jersey's choice of law rules,[5] "the first step is to determine whether an actual conflict exists." *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143, 962 A.2d 453, 460 (2008). If there is no conflict, there is no choice of law issue to be resolved, and New Jersey law applies. *Id*. TD fails to establish this initial test is met by failing to identify any actual conflict between the NJCFA, GBL, and UTPCPL. To the extent the NJCFA is *more* protective of consumers, this does not create a true conflict. *See CDK Glob., LLC v. Tulley Auto. Grp., Inc.,* No. 15- CV-

---

[5] Because TD does not base its argument on its purported choice of law provision, but instead on general choice of law principles, Plaintiffs do the same here. To the extent a choice of law provision is deemed applicable, Plaintiffs reserve the right to supplement their briefing.

3103, 2021 WL 1187123, at *6 (D.N.J. Mar. 30, 2021) (Applying NJCFA to out-of-state citizens because the court found "no support for the proposition that New Hampshire would object to its citizens receiving greater, as opposed to less, protection than it affords under its own law[.]").

Even assuming an actual conflict exists, New Jersey law still applies under the "most significant relationship" test used in this state. *See id.* On the facts available at this stage, there is one fact that is not in dispute: TD's headquarters and principal place of business is in New Jersey. Moreover, the heart of this dispute is TD's misrepresentations, which Plaintiffs allege emanated from New Jersey. *See Cont'l Ins. Co. v. Beecham, Inc.,* 836 F. Supp. 1027, 1041 (D.N.J. 1993) ("The heart of this dispute is the insurance contracts, which have the most significant contacts with New Jersey."); *In re Mercedes-Benz Tele Aid Cont. Litig.,* 267 F.R.D. 113, 145 (D.N.J. 2010), *opinion modified on reconsideration*, No. 07-CV-2720, 2010 WL 2976496 (D.N.J. July 22, 2010) (applying New Jersey law to nationwide class because misrepresentations emanated from New Jersey).

### B.  Plaintiffs State a Claim for Breach of Contract

In moving to dismiss Plaintiffs' breach of contract claim, TD does not argue that its contract allowed for the assessment of Return Fees. Instead, TD argues only that a notice provision in its contracts required Plaintiffs to notify TD of its own, wrongful fee policy within 30 days. The argument fails for several reasons.

First, the provision does not apply. TD's assessment of Return Fees were not "errors" which required reporting to the Bank, but rather a conscious policy which the Bank implemented—as no doubt the Bank would have informed an accountholder who fruitlessly attempted to raise such an "error" with TD. Indeed, the plain language of the notice provision has no application to intentionally imposed bank fees, like the case here. Rather, it concerns "errors" such as forgeries.

**Periodic Statements;** ***Time Limit to Report Errors***

[. . . ]

If you assert against us a claim that an item was not properly payable because, ***for example, the item was forged or an endorsement was forged***, you must cooperate with us and assist us in seeking criminal and civil penalties against the person responsible . . .

***You must notify us as soon as possible if you believe there is an error, forgery or other problem with the information shown on your Account statement***. You agree that thirty (30) Calendar Days after we mailed a statement (or otherwise made it available to you) is a reasonable amount of time for you to review your Account statement ***and report any errors, forgeries or other problems***. In addition, you agree not to assert a claim against us concerning **any error, forgery or other problem relating to a matter shown on an Account statement unless you notified us of the error, forgery or other problem within thirty (30) Calendar Days after we mailed you the statement (or otherwise made it available to you)***. This means, for example, that you cannot bring a lawsuit against us, even if we are at fault, for paying checks bearing a forgery*** of your signature unless you reported the forgery within thirty (30) Calendar Days after we mailed you the statement (or otherwise made it available to you) listing the check we paid**.

There are exceptions to this 30 day notice requirement. **For claims asserting forged, missing or unauthorized endorsement or**

31

> **alteration**, you must notify us within the period specified by the state
> law applicable to your Account.

Compl., Ex. A, at 12–13 (emphasis added).

Read in context, this standard error resolution provision is not a broad pre-litigation requirement, but instead concerns situations involving forgeries, fraud, or true mistakes that were not part of corporate policy. The provision, read as a whole, is plainly intended to provide TD an opportunity to investigate a forgery or fraud by third parties—not its own internal fee practices. TD is already aware of the fees it levies on its customers and does not need additional notice that it imposed such fees.

As TD acknowledges, multiple courts have held that these "error provisions don't apply with respect to similar provisions in other banks' agreements. For example, in *Hartnett v. Washington Fed. Bank*, No. C21-888-RSM-MLP, 2021 WL 6494953, at *2 (W.D. Wash. Dec. 7, 2021), the court evaluated a nearly identical provision which stated, "You agree not to assert a claim against us concerning any error, forgery or other problem relating to a matter shown on an Account statement unless you notified us of the error, forgery or other problem within sixty (60) Calendar Days after we made your statement available to you." The court had no difficulty concluding such a provision did not apply to the facts of that case, which concerned the bank's own internal fee policies, holding:

> Because the notice requirement expressly concerned 'error, forgery or other problem,' read as a whole, the provision is focused on fraudulent actions by third parties or unintentional errors by Washington Federal.

32

The intentional imposition of fees, as a matter of policy, was not the type of 'problem' subject to the notice requirement.

*Id.*

Similarly, in *Smith v. Fifth Third Bank*, the court reasoned that a similar error resolution provision did not apply:

[R]ead as a whole, the provision is reasonably construed as focused on forgeries, fraud, and other alterations by third parties – the type of discrepancies for which Fifth Third would rely upon its accountholders to provide it with notice. Nowhere in the referenced notice provision is there any explicit or implicit reference to fees imposed by Fifth Third itself, according to its own interpretation of its fee schedule. As Plaintiffs point out, Fifth Third presumably would have no need of notice of those fees.

No. 1:18-CV-0464, 2019 WL 1746367, at *9 (S.D. Ohio Apr. 18, 2019).

Likewise, in *Noe v. City Nat'l Bank of West Virginia*, 3:19-CV-0690, 2020 WL 836871, at *4 (S.D. W. Va. Feb. 19, 2020), when faced with a similar error resolution provision imposed by statute, the trial court aptly noted: "The Court struggles to conceive of a scenario in which a fee could be justified by a contract and assessed as a regular business practice, yet still be considered an 'error' within any reasonable definition of the word." *Id.* And the Western District of Missouri came to the same conclusion in *Walkingstick v. Simmons Bank,* No. 6:19-CV-03184, 2020 WL 249473, at *2 (W.D. Mo. Jan. 16, 2020), holding: "Defendant has not persuaded

33

the Court how the notice and cure provision unequivocally precludes Plaintiffs' claims." *Id.*[6]

TD cites only *one* case in support of its argument, which concerned a much broader notice provision in an employment agreement. *See USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175 (S.D.N.Y. 2011). In that case, the notice provision stated: "[n]either party shall be deemed to have breached the covenants contained in this [agreement] unless it has failed to have cured a default of the provisions of this [agreement] within (15) days of being notified in writing of such default. *Id.* at 181. Here, TD's notice provision is not nearly so broad, and does not require notice of every purported breach of its agreement, but instead requires notice only of fraud.

---

[6] Numerous other courts are in accord. *See Lussoro*, 456 F. Supp. 3d at 481–82 (holding that "the Contract is at least ambiguous as to whether this error provision applies to a situation where Defendant has intentionally imposed fees" and declining to enforce error resolution provision in overdraft fee case); *Tannehill v. Simmons Bank*, No. 3:19-CV-140, 2019 WL 7176777, at *1 (E.D. Ark. Oct. 21, 2019) (declining to enforce notice and cure provision in case involving the bank's fees); *McNeil v. Cap. One Bank, N.A.,* No. 19-CV-00473, 2020 WL 5802363, at *2 (E.D.N.Y. Sept. 29, 2020) (declining to enforce notice and cure provision because "the 'notification provisions' Capital One cites only contemplate notice where a third party caused an unauthorized loss" and not the bank's own fees); *Howards v. Fifth Third Bank,* No. 1:18-CV-869, 2023 WL 1778522, at *9 (S.D. Ohio Feb. 6, 2023) (declining to apply notice provision to bank's own fees); *Schertzer v. Bank of Am., N.A.,* No. 19-CV-264, 2022 WL 1004559, at *16 (S.D. Cal. Apr. 4, 2022) ("[I]f the notice provisions were meant to cover problematic fees, it would have been simple for BANA to include the word, 'fees,' within this list, rather than presume the account holder would recognize the fee issue as included in reference, 'or other problems.' Thus, the court declines to find that the alleged errors were untimely reported[.]").

<u>Second</u>, TD's argument is premature. Plaintiffs plead that they performed the obligations imposed on them under the contract. Compl. ¶ 71 ("Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Account Agreement."). TD presents no evidence that Plaintiffs failed to comply with the notice and cure provision, but simply presumes they did not. The requisite factual record is simply incomplete and undeveloped on this issue and it cannot be resolved on a Motion to Dismiss when all disputes are weighed in Plaintiffs' favor. *See, e.g., Corona v. PNC Fin. Servs. Grp., Inc.,* No. 2:20-CV-06521, 2021 WL 1218258, at *7 (C.D. Cal. Mar. 16, 2021) (holding argument as to whether plaintiff complied with notice and cure provision was premature on motion to dismiss).

<u>Third</u>, even if (after discovery) it is shown that Plaintiffs did not comply with the provision, it is unenforceable due to futility. Even after being provided notice by the CFPB that the assessment of such fees is considered "unfair" under federal law, TD *still* failed to refund Plaintiffs and all class members of the fees at issue. If the CFPB's notice did not spur the Bank to act, an accountholder's complaint would not either. Compliance under such circumstances would have been useless. *See, e.g.*, *Lussoro*, 456 F. Supp. 3d at 482 ("The Court finds that enforcing strict compliance with the notice-and-cure provision would be useless with respect to the alleged error in this case, given that Defendant was aware of the charges[.]"); *Kivett v. Flagstar*

*Bank*, 333 F.R.D. 500, 504 (N.D. Cal. 2019), *vacated and remanded sub nom on other grounds*, *Kivett v. Flagstar Bank, FSB,* No. 21-15667, 2022 WL 1553266 (9th Cir. May 17, 2022) ("[T]his order pauses to note that even if the notice-and-cure provision applied here, the failure of absent class members to comply with the notice-and-cure provision is excusable on the ground of futility."); *Hippocratic Growth Maryland Processing, LLC v. Pesce*, No. 22-CV-00090, 2022 WL 5245752, at *7 (D. Md. Oct. 6, 2022) (declining to enforce notice and cure provision because notice would have been futile); *Tri-City Assocs., L.P. v. Belmont, Inc.*, 2016 S.D. 46, ¶ 14, 881 N.W.2d 20, 23 (Noting "courts have held that futility applies in the context of compliance with a notice-and-cure provision" and citing cases).

Finally, even if the Court were to re-interpret the error resolution provisions to apply to Plaintiffs' claims (they do not), enforcement of such provisions would be unconscionable. *See, e.g.*, *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 267 (3d Cir. 2003) (holding that a thirty-day time restriction to bring claims was substantively unconscionable.); *see also Smith*, 2019 WL 1746367, at *9 (noting that "to interpret the notice provision to apply to bank fees could be viewed as hypertechnical and unconscionable").

## C.  Plaintiffs State a Claim for Breach of the Implied Covenant

An implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law. *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d

159, 169–70 (3d Cir. 2001). New Jersey law holds that a party to a contract can breach the implied duty of good faith even if that party abides by the express and unambiguous terms of that contract if that party "acts in bad faith or engages in some other form of inequitable conduct." *Id.* A claim for breach of an implied obligation can be pled alongside a breach of contract claim as an alternative form of liability. *See id.* at 163.

The law is the same in New York, where the covenant of good faith and fair dealing is implicit in every contract and "encompasses any promise that a reasonable 37romise would understand to be included." *See Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*, 949 N.Y.S.2d 115, 118 (2d Dep't 2012). Thus, a defendant who has "complied with the literal terms of the [parties'] contract" may nevertheless be liable for breaching its implicit duties if it so acts "in a way that undermines the purpose of the contract." *Benex LC v. First Data Merch. Servs. Corp.*, 14-CV-6393, 2016 WL 1069657, at *3 (E.D.N.Y. Mar. 16, 2016) (quoting *In re HSBC*, 1 F. Supp. 3d at 51).

The same is also true in Pennsylvania. *See Hordis v. Cabot Oil & Gas Corp.*, No. 3:19-CV-296, 2020 WL 2128968, at *4–5 (M.D. Pa. May 5, 2020). In cases where, as here, a plaintiff alleges that the defendant breached its duty to act in good faith in addition to specifically alleging a breach of contract, Pennsylvania courts have consistently denied attempts to dismiss a claim for the breach of the implied

covenant of good faith and fair dealing. *See*, *e.g.*, *Kamco Indus. Sales, Inc. v. Lovejoy, Inc.,* 779 F. Supp. 2d 416, 430 (E.D. Pa. 2011).

Here, Plaintiffs allege TD violated the implied covenant because it abused the discretion it reserved to itself and acted in bad faith by charging Return Fees (and overdraft fees) even when it never provided money to an accountholder. To the extent TD has discretion as to when to charge Fees, Plaintiffs allege that it failed to exercise that discretion in good faith. Multiple courts have recognized that similar allegations provide a basis for a breach of the implied covenant. *See, e.g., In re HSBC*, 1 F. Supp. 3d at 54 (permitting claim to proceed despite HSBC's argument that it had contractual authority to post debit transactions from high to low); *Gutierrez v. Wells Fargo & Co.,* 622 F. Supp. 2d 946, 953 (N.D. Cal. 2009) (permitting claim to proceed despite Wells Fargo's argument that it had contractual authority to post items to checking account in any order the bank chose).

TD argues Plaintiffs' implied covenant claim is duplicative of their breach of contract claim. But as the court explained in *McNeil*, in rejecting the same argument, "At this early stage of a proceeding, plaintiffs are 'entitled to plead alternative and inconsistent causes of action and to seek alternative forms of relief.'" *McNeil*, 2020 WL 5802363, at *2; *see also Columbian Spot, LLC v. Dollar Bank,* No. 21-CV-1171, 2022 WL 4610644, at *3 (W.D. Pa. Sept. 30, 2022) (denying motion to dismiss breach of implied covenant claim under Pennsylvania law when claim was largely

duplicative of breach of contract claim). At the very least, whether TD acted in bad faith is an issue of fact not suitable for adjudication on a motion to dismiss. *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d at 1364 (holding whether bank acted reasonably "is a fact question that cannot be resolved at this stage."); *In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d at 1317 (same).

## V.   CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: October 27, 2023

*/s/ Renner K. Walker*
Renner K. Walker
Steven M. Nathan (admitted pro hac vice)
**Hausfeld LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004

James J. Pizzirusso (admitted pro hac vice)
**Hausfeld LLP**
888 16th Street N.W.
Suite 300
Washington, D.C. 20006

Sophia Goren Gold
**KalielGold PLLC**
950 Gilman Street, Ste 200
Berkeley, CA 94710

Jeffrey D. Kaliel
**KalielGold PLLC**
1100 15th Street NW 4th Floor
Washington, D.C. 20005

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Renner K. Walker, hereby certify that on October 27, 2023, the foregoing

memorandum of law was served on all counsel of record via the Court's ECF system.

/s/ Renner K. Walker
Renner K. Walker