Susan M. Leming
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
856-854-8900
sleming@brownconnery.com

Noah A. Levine
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212-230-8875
noah.levine@wilmerhale.com
(admitted *pro hac vice*)

Samuel J. McHale
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
202-663-6346
sam.mchale@wilmerhale.com
(admitted *pro hac vice*)

*Attorneys for Defendant TD Bank, N.A.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| CATHY LAFURGE and MONICA OROURKE, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> TD BANK, N.A., <br><br> *Defendant.* | Civil Action No. 1:23-cv-03946-RMB-AMD <br><br> **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Oral Argument Requested <br><br> Motion Date: November 20, 2023 |

# TABLE OF CONTENTS

I.     The NBA and Its Regulations Preempt Plaintiffs' UDAP Unfairness Claims ........................................................................................................2

II.    Plaintiffs' UDAP Misrepresentation Claims Should Be Dismissed In View Of Their Contract Claims....................................................................6

III.   New Jersey Choice Of Law Principles Foreclose Plaintiffs' Claims Under The NJ CFA ...............................................................................................8

IV.    Plaintiffs' UDAP Claims Should All Be Dismissed Because They Fail To Allege Causation Or Justifiable Reliance ...............................................10

V.     Plaintiffs Fail To State A Claim For Breach Of Contract Or The Implied Covenant........................................................................................12

CONCLUSION .............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abramson v. Affinity Federal Credit Union*,
  2021 WL 3885325 (D.N.J. Aug. 31, 2021) ......................................................11

*Alexander v. Anthony International, L.P.*,
  341 F.3d 256 (3d Cir. 2003) ..............................................................................14

*Bank of America v. City & County of San Francisco*,
  309 F.3d 551 (9th Cir. 2002) ...............................................................................5

*Barnett Bank of Marion County, N.A. v. Nelson*,
  517 U.S. 25 (1996)...........................................................................................3, 4

*Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*,
  2012 WL 924380 (D.N.J. Mar. 19, 2012) ...........................................................8

*Burns v. TD Bank, N.A.*,
  2022 WL 17547258 (D.N.J. Dec. 8, 2022)...................................................11, 15

*Corona v. PNC Financial Services Group, Inc.*,
  2021 WL 1218258 (C.D. Cal. Mar. 16, 2021)....................................................14

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) ..............................................................................15

*Curtiss-Wright Corp. v. Rodney Hunt Co.*,
  1 F. Supp. 3d 277 (D.N.J. 2014).........................................................................8

*Dzielak v. Whirlpool Corp.*,
  26 F. Supp. 3d 304 (D.N.J. 2014).......................................................................9

*Franklin National Bank of Franklin Square v. People*,
  347 U.S. 373 (1954)............................................................................................3

*Gregg v. Ameriprise Financial, Inc.*,
  245 A.3d 637 (Pa. 2021)...................................................................................10

*Gutierrez v. Wells Fargo Bank, NA*,
  704 F.3d 712 (9th Cir. 2012) ..............................................................................4

*Holve v. McCormick & Co.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) ................................................................. 6

*Hughes v. TD Bank, N.A.*,
  856 F. Supp. 2d 673 (D.N.J. 2012) ..................................................................... 11

*In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litigation*,
  1 F. Supp. 3d 34 (E.D.N.Y. 2014) ................................................................... 3, 4

*In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*,
  150 F. Supp. 3d 593 (D.S.C. 2015) ................................................................... 12

*International Union of Operating Engineers v. Merck & Co.*,
  192 N.J. 372 (2007) ........................................................................................... 9

*Kelly v. Community Bank, N.A.*,
  2020 WL 777463 (N.D.N.Y. Feb. 18, 2020) ............................................... 10, 11

*Knox v. Samsung Electronics America, Inc.*,
  2009 WL 1810728 (D.N.J. June 25, 2009) .......................................................... 9

*Lamoureux v. Trustco Bank*,
  592 F. Supp. 3d 14 (N.D.N.Y. 2022) ................................................................. 11

*Landau v. Viridian Energy PA LLC*,
  223 F. Supp. 3d 401 (E.D. Pa. 2016) ................................................................. 6

*Lewis v. Government Employees Insurance Co.*,
  2019 WL 1198910 (D.N.J. Mar. 14, 2019) .......................................................... 8

*Lussoro v. Ocean Financial Federal Credit Union*,
  456 F. Supp. 3d 474 (E.D.N.Y. 2020) ............................................................... 11

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013) .............................................................................. 9

*Mann v. TD Bank, N.A.*,
  2009 WL 3818128 (D.N.J. Nov. 12, 2009) ...................................................... 4, 6

*McDonough v. State Farm Fire & Casualty Co.*,
  365 F. Supp. 3d 552 (E.D. Pa. 2019) ................................................................ 10

*Montich v. Miele USA, Inc.*,
  849 F. Supp. 2d 439 (D.N.J. 2012) ........................................................8

*Richard v. Glens Falls National Bank*,
  2021 WL 810218 (N.D.N.Y. Mar. 3, 2021) ................................11, 15

*Rojas v. Don King Productions, Inc.*,
  2012 WL 760336 (S.D.N.Y. Mar. 6, 2012) ........................................12

*Roy v. ESL Federal Credit Union*,
  2020 WL 584297 (W.D.N.Y. Sept. 30, 2020) ....................................11

*Sanchez v. Navy Federal Credit Union*,
  2023 WL 6370235 (C.D. Cal. Aug. 14, 2023) ......................................7

*Smith v. Jovia Financial Credit Union*,
  2021 WL 4173655 (E.D.N.Y. Aug. 24, 2021) ....................................12

## STATUTES, RULES, AND REGULATIONS

12 C.F.R. § 7.4002(a) ........................................................................3

12 U.S.C. § 24 ..................................................................................2

N.J.S.A. § 2A:14-1(a) ......................................................................9

N.Y. C.P.L.R. § 214(2) ....................................................................9

## OTHER AUTHORITIES

CFPB Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment
  Practices, 87 Fed. Reg. 66,940 (Nov. 7, 2022) ....................................5

TD's opening brief explained why Plaintiffs' claims should be dismissed.  In response, Plaintiffs' Opposition frequently misstates the governing law and fails to identify allegations in the Complaint sufficient to overcome TD's arguments.  Three propositions, each applicable to a different subset of Plaintiffs' claims, collectively warrant dismissal of the Complaint with prejudice.  *First*, Plaintiffs' UDAP unfairness claims fail because they are preempted by the National Bank Act ("NBA") and OCC regulations.  Where, as here, Plaintiffs seek to apply state law to prevent TD from charging fees the NBA and its regulations expressly empower TD to charge, *Barnett Bank* precludes that application of state law.  Critically, the NBA (*not* the Consumer Financial Protection Act) is the preempting statute here, and any conflict must be analyzed by reference to the fees the NBA authorizes—which have long included Return Fees.[1]

*Second*, Plaintiffs' UDAP misrepresentation claims fail because they have not pled a *single* extra-contractual representation, let alone any misrepresentation.  If the contract language truly prohibits TD from charging Return Fees and Overdraft Fees when it fails to make funds available, as Plaintiffs argue, it defies logic to call that a *misrepresentation* rather than a *contractual promise*.  And if the

---

[1] All of Plaintiffs' UDAP claims also should be dismissed for failure to properly plead causation or justifiable reliance.  *See supra*, Section IV.  Plaintiffs' NJ CFA claims also fail because Plaintiffs may not simultaneously raise claims under the laws of multiple states to seek recovery for the same underlying conduct.  *See supra*, Section III.

1

contract language does *not* prohibit TD from charging these fees, then charging

them cannot be contrary to the representations made by that same contract

language and, thus, cannot establish a misrepresentation.  In either scenario,

Plaintiffs' misrepresentation claims fail.

Third, Plaintiffs' contract claims fail because they do not plead they

provided TD with pre-suit notice.  Indeed, Plaintiffs concede that their allegations

on this point are contained in a single sentence in their Complaint—a vague

suggestion they complied with "substantially all" their contractual obligations.

Plaintiffs fare no better arguing pre-suit notice to challenge fees charged by bank

practice was not required.  TD's argument was clear:  regardless of whether

Plaintiffs were obligated to dispute contractually authorized Return Fees or

Overdraft Fees, they certainly were required to notify TD if, as Plaintiffs allege,

they thought Return Fees were improperly charged *because* they believed, as a

factual matter, they had not received provisional credit.  *See* Mot. at 13.

## I.    The NBA and Its Regulations Preempt Plaintiffs' UDAP Unfairness Claims

The NBA authorizes national banks "to carry on the business of banking"

by, among other things, "receiving deposits" and exercising other "such incidental

powers" as necessary.  12 U.S.C. § 24 (Seventh).  Long-established regulations

implementing those powers authorize national banks to charge "non-interest

charges and fees, including deposit account services charges."  12 C.F.R. §

7.4002(a).  As TD argued in its opening brief (at 17-18), the "wide latitude" granted under this authority has long been understood to include Return Fees.  The problem with Plaintiffs' Complaint is they seek to use a concept of "unfairness" under state law to *prohibit* TD from doing what the NBA says TD is *authorized* to do—charge Return Fees.   As *Barnett Bank of Marion County, N.A. v. Nelson* made clear, state law is preempted if it "forbids" a national bank from "engag[ing] in activities" that the NBA has "authorize[d]."  517 U.S. 25, 31-32 (1996).  Plaintiffs' unfairness claims seek to do exactly that and are therefore preempted.  None of Plaintiffs' arguments, which badly misconstrue the law, have merit.

*First*, Supreme Court precedent refutes Plaintiffs' argument that preemption applies only where a state law "usurps" federal law or "prohibit[s] any behavior" required by—as opposed to authorized by—the NBA.  Opp. at 23-24.  *Barnett Bank* and *Franklin National Bank of Franklin Square v. People* expressly rejected this cramped "irreconcilable conflict" view of NBA preemption.  *See* 517 U.S. at 31 (recognizing federal and state law were not irreconcilable, but finding preemption "nonetheless" because state law was an "obstacle" to the exercise of an authorized power); 347 U.S. 373, 379 (1954) (treating as irrelevant lower court finding that other national banks in New York complied with the state law).  For that reason, Plaintiffs' repeated reliance on *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014), is inappropriate:

3

of course a national bank *could* simultaneously comply with federal and state law by simply declining to charge the challenged fees.[2]  But the germane inquiry is whether application of state law poses "an obstacle" to the bank's exercise of federally authorized powers.  *Barnett Bank*, 517 U.S. at 31.  Here, that conflict is direct, so state law is preempted.  *Id.*

*Second*, Plaintiffs' argument that generally applicable state UDAP laws cannot be preempted misses the point.  TD's argument is that Plaintiffs' particular application of state UDAP laws is preempted.  Again, Plaintiffs' authority undermines their argument.  In *Mann v. TD Bank, N.A.*, the court held that Plaintiffs' NJ CFA misrepresentation claims were not preempted, but the remaining NJ CFA claims *were* preempted:  where "federal law clearly authorizes national banks" to sell certain gift cards, "any application of the NJCFA that would penalize Defendants for doing so is clearly preempted."  2009 WL 3818128, at *4 (D.N.J. Nov. 12, 2009).  Supreme Court and appellate precedent also foreclose Plaintiffs' argument.  *See, e.g.*, *Barnett Bank*, 517 U.S. at 28 (NBA prohibits "application" of state law to prevent national bank from exercising its federally authorized power to sell insurance in small town); *Gutierrez v. Wells Fargo Bank,*

---

[2] *HSBC* is also distinguishable because plaintiffs there challenged HSBC's "alleged manipulation of their debit and checking charges," as opposed to the bank's ability to charge fees at all.  1 F. Supp. 3d at 47.

*NA*, 704 F.3d 712, 730 (9th Cir. 2012) (NBA preempts "the application" of unfairness prong of California's UCL "to dictate" posting order).

    *Third*, Plaintiffs' argument that the CFPB Bulletin's application of *the Consumer Financial Protection Act* somehow saves their claim from preemption under *the NBA* ignores the relevant inquiry—the preemptive force of the NBA. Even if Congress may delegate power to the CFPB to address certain federally authorized fees, that does not mean Congress gave States similar authority; indeed, it has *no* relevance to the scope of preemption under the NBA. *See Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 565 (9th Cir. 2002) (rejecting as irrelevant to NBA preemption analysis the argument that EFTA authorizes states to regulate ATM fees). Moreover, even if the Bulletin were somehow relevant to the preemption inquiry here, Plaintiffs completely fail to address that the CFPB will not seek monetary relief for any Return Fees charged prior to November 2023, 87 Fed. Reg. 66,940, 66,940 n.1 (Nov. 7, 2022), yet that is precisely what Plaintiffs seek to wield state law to do here. The conflict is obvious.

    *Fourth*, Plaintiffs cite a single unpublished case from outside this circuit to argue that regardless of NBA preemption, their claims should proceed because TD's motion must attack their UDAP claims in their "entirety." Opp. at 20. But where, as here, Plaintiffs raise multiple claims arising under different prohibitions of the same statute, this court's precedent (and Plaintiffs' own case law) is clear

that a motion to dismiss may properly proceed against any of those claims. *Mann* is again instructive. In *Mann*, the court dismissed plaintiffs' NJ CFA claims challenging the issuance of gift cards and amount of fees charged but refused to dismiss plaintiffs' NJ CFA claims based on a theory of deceptive advertising. 2009 WL 3818128, at *8. This approach, which has obvious value for focusing the litigation on only viable theories of recovery, is consistent with precedent addressing other state UDAP laws. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 421-423 (E.D. Pa. 2016) (dismissing PA UTPCPL claims for injunctive relief but not other PA UTPCPL claims); *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 557-559 (W.D.N.Y. 2018) (dismissing NY GBL claims based on false labels but not NY GBL claims based on deceptive conduct).[3]

## II.  Plaintiffs' UDAP Misrepresentation Claims Should Be Dismissed In View Of Their Contract Claims

TD does not argue that UDAP misrepresentation claims and contract claims categorically may not "co-exist," as Plaintiffs' straw-man argument frames it. Opp. at 17. Rather, TD argues that Plaintiffs' UDAP allegations are based *solely* on statements *in TD's contract*, which dooms their misrepresentation claims.[4] *See*

---

[3] Plaintiffs also state, without support, that "TD has conceded that Plaintiffs' [sic] have stated valid claims under the Acts '[a]s a whole.'" Opp. at 20. It is not clear who or what Plaintiffs are quoting, but TD never conceded this.

[4] Plaintiffs' Opposition confirms there is no daylight between their UDAP and contract claims: after an irrelevant, incorrect recitation of the contract provisions they allege TD breached, Plaintiffs conclude on that basis alone that "TD violates

Mot. at 22.  This is why:  On the one hand, if Plaintiffs are correct that TD "is only

authorized by contract to charge [Return Fees] and/or Overdraft Fees" when funds

are made available, *e.g.* Compl. ¶ 28, then the contract statements cannot be

*misrepresentations*; rather, they would be *promises* (which Plaintiffs allege TD

breached).  On the other hand, if Plaintiffs are wrong about what those contract

statements mean, then logically those same statements cannot be

misrepresentations.  Again, those same statements would be contractually

enforceable statements of TD's authority.  Plaintiffs' Complaint does not contain,

and their Opposition does not point to, a single plausible allegation of something

*other* than a breach of TD's purported contractual obligations.  *See* Opp. at 15-16

(citing Compl. ¶¶ 3, 24, 82).[5]  Therefore, Plaintiffs either have pled a plausible

theory for a breach of contract (setting aside TD's notice argument), or they have

pled neither a breach of contract nor a misrepresentation.  As TD pointed out in its

opening brief (at 22-23) and Plaintiffs failed to address, this is a recognized

principle.  *See Sanchez v. Navy Fed. Credit Union*, 2023 WL 6370235, at *9 (C.D.

---

the Acts"—the NJ CFA, NY GBL, and PA UTPCPL.  *See* Opp. at 2, 5-9.

[5] Plaintiffs' Opposition suggests, without support, that the Fee Schedule is a
"marketing document," but the Account Agreement unambiguously makes the Fee
Schedule part and parcel of the contract.  *See* Dkt. 24-3, PDAA, at 1 ("This
Agreement consists of Parts I-VI below, any supplement(s) and amendment(s),
[and, among other things, the] Personal Fee Schedule(s)").

Cal. Aug. 14, 2023) (no authority "that a statement contained inside a contract is actionable" under state UDAP law).

For these reasons, Plaintiffs' allegations that TD's deception derives solely from a breach of contract does not plausibly support a standalone misrepresentation claim and warrants dismissal.  *See Lewis v. Gov't Emps. Ins. Co.*, 2019 WL 1198910, at *5 (D.N.J. Mar. 14, 2019) (dismissing NJ CFA claim where allegations were "tied directly to the alleged breach").

## III.  New Jersey Choice Of Law Principles Foreclose Plaintiffs' Claims Under The NJ CFA

Neither of Plaintiffs' two responses to TD's choice-of-law argument have merit.  *First*, this court's precedent is clear that choice of law arguments are "not premature" on a Rule 12(b)(6) motion.  *Curtiss-Wright Corp. v. Rodney Hunt Co.*, 1 F. Supp. 3d 277, 286 (D.N.J. 2014); *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2012) (collecting Third Circuit cases holding that choice of law issues may be considered on 12(b)(6) motion when necessary facts are pled).  Courts in this district have also held that an "actual conflict" exists between the NJ CFA and both the PA UTPCPL and NY GBL.  *Curtiss-Wright Corp.*, 1 F. Supp. 3d at 284 (actual conflict between NJ CFA and PA UTPCPL); *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, 2012 WL 924380, at *15 (D.N.J. Mar. 19, 2012) (same for NJ CFA and NY GBL).  These actual conflicts pose real, substantial issues in this litigation.  As one example, the NJ CFA has a

six-year statute of limitations, *see* N.J.S.A. § 2A:14-1(a), while the NY GBL has a

three-year statute of limitations, *see* N.Y. C.P.L.R. § 214(2).

   *Second*, this court has forbidden plaintiffs from simultaneously raising

claims under the UDAP laws of multiple states.  *See Dzielak v. Whirlpool Corp.*,

26 F. Supp. 3d 304, 332 (D.N.J. 2014) (plaintiffs may "only" raise claims under

laws of the state where they lived and injury occurred).  In opposition, Plaintiffs

rely principally on a New Jersey Superior Court case permitting a nationwide class

to raise claims under the NJ CFA.  Opp. at 29.  But this ignores that those plaintiffs

did not assert claims under the laws of multiple states, and that in reversing the

Superior Court on other grounds, the New Jersey Supreme Court was skeptical,

stating that permitting a nationwide class to raise claims under the NJ CFA was

extremely "rare."  *Int'l Union of Operating Eng'rs v. Merck & Co.*, 192 N.J. 372,

388 n.3 (2007).  Plaintiffs' other cases fare no better.  *See Maniscalco v. Brother*

*Int'l (USA) Corp.*, 709 F.3d 202, 210 (3d Cir. 2013) (rejecting reasoning of

*Mercedes-Benz* because "it is far from clear" that New Jersey's "interest in

deterring misconduct by corporations headquartered within its borders"—the sole

rationale in *Mercedes-Benz*—is "sufficient to outweigh significant contacts with a

plaintiff's home state"); *Knox v. Samsung Elecs. Am., Inc.*, 2009 WL 1810728, at

*4 (D.N.J. June 25, 2009) (distinguishing *Elias* on grounds that "it is not clear"

that New Jersey "intended out-of-state consumers to engage in end runs around local law . . . to avail themselves of . . . class remedies that those states deny").

## IV.   Plaintiffs' UDAP Claims Should All Be Dismissed Because They Fail To Allege Causation Or Justifiable Reliance

Plaintiffs fail to address TD's argument that Plaintiffs' allegations concerning causation were conclusory and insufficient to satisfy Rule 8(a)—let alone Rule 9(b), which applies to the NJ CFA claim.  Indeed, Plaintiffs fail to address any cases cited by TD in support of its causation arguments.

*First*, Plaintiffs argue that justifiable reliance is not an element of a PA UTPCPL claim, citing a 2012 Pennsylvania Superior Court case which held only that one need not prove "all the elements of common law fraud."  Opp. at 14, 18. Yet TD argued only that, consistent with the 2021 Pennsylvania Supreme Court decision in *Gregg v. Ameriprise Financial, Inc.*, the PA UTPCPL's private right of action provision "creates a causation element, which requires a private plaintiff to demonstrate justifiable reliance."[6]  245 A.3d 637, 646 (Pa. 2021).  Plaintiffs do not allege this.  *See* Mot. at 25-28.  Indeed, in their Opposition, Plaintiffs do not argue they pled justifiable reliance.  *See* Opp. at 18-19.

---

[6] Indeed, cases cited in other sections of Plaintiffs' Opposition demonstrate that justifiable reliance is required by the PA UTPCPL.  *See, e.g.*, *McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 561-562 (E.D. Pa. 2019) (rejecting argument that PA UTPCPL does not require pleading justifiable reliance); *Kelly v. Cmty. Bank, N.A.*, 2020 WL 777463, at *8 (N.D.N.Y. Feb. 18, 2020) ("[p]laintiff has failed to allege justifiable reliance" under PA UTPCPL).

*Next*, Plaintiffs argue their NJ CFA and NY GBL claims are sufficiently pled because "similar allegations" were sufficient in ten other cases. Opp. at 18. To start, setting aside that nothing in Plaintiffs' Opposition identifies what those "similar" allegations were, TD showed in its opening brief (at 26-28) that Plaintiffs' Complaint does not include *any* nonconclusory allegations of causation. Plaintiffs' response is simply to quote the same conclusory allegations, Opp. at 18, which as TD explained (at 26) courts have found insufficient in other cases.

Just as importantly, none of Plaintiffs' cases control here, and precious few are even facially relevant. In *Kelly v. Community Bank, N.A.,* the court *dismissed* plaintiffs' NY GBL (and PA UTPCPL) claims. 2020 WL 777463, at *7-10 (N.D.N.Y. Feb. 18, 2020). Six more of Plaintiffs' ten cases are irrelevant because defendants in those cases did not contest, or the courts did not address, causation. *See Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 680-81 (D.N.J. 2012); *Burns v. TD Bank, N.A.*, 2022 WL 17547258, at *10 (D.N.J. Dec. 8, 2022); *Abramson v. Affinity Fed. Credit Union*, 2021 WL 3885325, at *6 (D.N.J. Aug. 31, 2021); *Richard v. Glens Falls Nat'l Bank*, 2021 WL 810218, at *16 (N.D.N.Y. Mar. 3, 2021); *Roy v. ESL Fed. Credit Union*, 2020 WL 5849297, at *11 (W.D.N.Y. Sept. 30, 2020); *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 492 (E.D.N.Y. 2020). That leaves just a few cases, all of which are distinguishable. *See Lamoureaux v. Trustco Bank*, 592 F. Supp. 3d 14, 42 (N.D.N.Y. 2022)

11

(holding only that NY GBL does not require justifiable reliance); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 639 (D.S.C. 2015) (collectively addressing NJ CFA and NY GBL claims with claims raised under seven more UDAP laws and resolving them in plaintiffs' favor because defendant's cited cases were "inapposite"); *Smith v. Jovia Fin. Credit Union*, 2021 WL 4173655, at \*7 (E.D.N.Y. Aug. 24, 2021) (NY GBL claim survived because plaintiff alleged had she known defendant would charge multiple NSF Fees despite contrary representations, she would have made "different payment decisions" to avoid fees and chosen a new bank).

## V.  Plaintiffs Fail To State A Claim For Breach Of Contract Or The Implied Covenant

Plaintiffs concede that the only allegation even potentially showing compliance with the contractual pre-suit notice requirement is a single sentence alleging generally they performed "substantially all" their obligations.  *See* Opp. at 35 (citing Compl. ¶ 71).  This conclusory allegation is insufficient to establish a necessary element of their contract claim.[7]  *See Rojas v. Don King Prods., Inc.*, 2012 WL 760336, at \*3 (S.D.N.Y. Mar. 6, 2012) (failure to plead compliance precludes contract claim).  Plaintiffs' arguments to the contrary are unavailing.

---

[7] Plaintiffs inexplicably find fault with TD for "present[ing] no evidence that Plaintiffs failed to comply[.]"  Opp. at 35.  But it is Plaintiffs' burden to plead all elements of a breach of contract claim.

*First*, Plaintiffs make much of cases (at 32-34) suggesting that plaintiffs need not comply with pre-suit notice provisions when they are challenging a bank's established fees.  Even if that were true, Plaintiffs here are in a different position:  In support of their contract claims, Plaintiffs argue the fees TD charged them were improper *because* of a specific factual contention—namely, TD allegedly never made funds available to them, so the contract did not authorize the fees.  *Compare* Dkt. 24-3, PDAA, at 43 (TD's "general policy" is to make funds from deposits available no later than the first business day after receipt of deposit).[8]

*Second*, Plaintiffs attempt to cast the pre-suit notice provision as covering only "fraud."  But this ignores the explicit references to "errors" and "other problems" in the contract.  Opp. at 31, 34.  As to those phrases, Plaintiffs make no argument why they would not encompass being charged Return Fees under factual circumstances they allege are contrary to what TD promised in its contract.

*Third*, this issue is ripe.  The sole case cited by Plaintiffs for the contrary proposition is an out-of-circuit unpublished case concerning purported violations

---

[8] TD refers herein to the operative version of the PDAA.  Dkt. 24-3; *see also* Dkt. 24-2, Leming Decl. ¶ 2.  Though Plaintiffs belatedly realized they neglected to attach the PDAA to their Complaint and purport to correct the error, Plaintiffs filed the September 2023 version, which strikes contract language referring to Return Fees.  *See* Dkt. 27-2 at 35 (addendum dated September 15, 2023).  Accordingly, that version cannot be either the one that Plaintiffs intended to file in June or the one in effect when Plaintiffs' fees were charged in January.

of California's debt collection practices act ("DCPA"), which did not hold it was "premature" to decide the issue, as Plaintiffs assert. *See Corona v. PNC Fin. Servs. Grp., Inc.*, 2021 WL 1218258, at *1 n.1, *7 (C.D. Cal. Mar. 16, 2021) (dismissing contract claim, and allowing DCPA claim to proceed because, in part, defendant did not explain "why [plaintiff's] notice [wa]s insufficient.").

*Fourth*, no allegation in the Complaint suggests it would have been futile for Plaintiffs to notify TD they were charged fees under factual circumstances they believed would not have resulted in a fee.  Plaintiffs contend, without support, that if the "CFPB's notice did not spur the Bank to act," neither would Plaintiffs' complaints.  Opp. at 35.  But as the Complaint makes clear, the CFPB Bulletin and Plaintiffs' contract claims are based on two entirely different things and, in any event, as TD's opening brief (and Plaintiffs' belatedly filed version of the PDAA) demonstrates, the PDAA and Fee Schedule no longer reference Return Fees.  *See* Mot. at 8.

*Fifth*, Plaintiffs' contention that TD's notice provisions are unconscionable lacks merit.  Plaintiffs cite only inapposite cases for that point:  an unpublished case from Ohio, and a Third Circuit case concerning an employment contract that required arbitration but gave employees only thirty days to begin the proceeding. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 259 (3d Cir. 2003).

14

*Finally*, Plaintiffs claim they "allege TD violated the implied covenant because it abused the discretion it reserved to itself and acted in bad faith[.]" Opp. at 38. Tellingly, Plaintiffs do not cite their Complaint for this proposition—because the Complaint does not say this. *See* Compl. ¶¶ 25-38, 66-71 (alleging only that TD violated the contract). Instead, Plaintiffs' implied covenant allegations consist of a single conclusory statement that TD breached the implied covenant "through its policies and practices as alleged herein." Compl. ¶ 71. Because Plaintiffs have not identified any allegations distinct from their contract claims, their implied covenant claims should be dismissed. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (New York does not permit implied covenant claims "based upon the same facts" as contract claim); *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) (same for New Jersey). Even Plaintiffs' own cases show that while they may plead "alternative and inconsistent causes of action," they may not plead implied covenant claims that are duplicative of breach of contract claims. *Richard*, 2021 WL 810218, at *15; *see also Burns*, 2022 WL 17547258, at *9 (similar).

## CONCLUSION

For the foregoing reasons, and those set forth in TD's opening brief, the Court should dismiss the Complaint with prejudice.

Dated: November 13, 2023                    Respectfully submitted,

s/Susan M. Leming

Susan M. Leming
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
sleming@brownconnery.com
856-854-8900

Noah A. Levine
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
noah.levine@wilmerhale.com
212-230-8875
212-295-6311
(admitted *pro hac vice*)

Samuel J. McHale
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
202-663-6346
sam.mchale@wilmerhale.com
(admitted *pro hac vice*)

*Attorneys for Defendant TD Bank, N.A.*